# Duncan's Extrs. v. Porch.

(Decided March 9, 1923.)

## Appeal from Henderson Circuit Court.

1. Depositions—Permitting Plaintiff to Retake Deposition Held not Abuse of Discretion.—In a suit involving an accounting, where defendant, who had the burden of proof, and who was an ignorant negro, who had kept no accounts, made a deposition in which he testified from memory as to the items of the account, it was not an abuse of discretion for the trial court, after plaintiffs had introduced a written account, to permit the defendant to retake his deposition, so as to show that the account introduced by plaintiffs related to transactions between defendant and a partnership, and did not include transactions with the individual, which were involved in the accounting, especially where nearly all of the evidence in the new deposition was competent in rebuttal, though it would have been incompetent in chief as a transaction with decedent, and the only objection to it was based on the assigned error in permitting the retaking of the deposition.

2. Trial—Court Can Determine Value of Wheat from General Knowledge.—In an accounting to determine the amount due on the purchase price of a tract of land after the purchaser had raised crops thereon for seven years, which he delivered to his vendor for sale, and the evidence showed the quantity of wheat raised on the land during a particular year, but did not show the market value of wheat that year, it was competent for the court to determine the value of that wheat from its general knowledge.

3. Appeal and Error—Allowance to Defendant of One-half the Value of Wheat During Years Before and After Held Favorable to Plaintiff.—Where there was no evidence as to the value of wheat produced by defendant during one year and delivered to plaintiff's testator, plaintiff cannot complain of an allowance by the court to defendant for that wheat equal to only one-half of the value of wheat, as shown by the evidence, for the years before and after the year in question.

4. Evidence—Admissions as to Indebtedness and Conduct of Tenant Held not Conclusive Against Him on Accounting.—In a suit by personal representative to have determined the amount due from a purchaser of land and to have the land sold for payment thereof, admissions made by the defendant before the suit as to the amount of the indebtedness, his failure to make any claim against the estate, and his attempts to borrow the amount claimed due by plaintiffs to complete the purchase of the land, which he did not deny, but stated were made because he had no record of his transactions with decedent, and did not believe he could establish his account, are not conclusive against him.

5. Account—Evidence Held to Show Account Contained Many, But Not All, of the Items of Dealings Between the Parties.—Where defendant had been a tenant on shares of a partnership composed of

plaintiffs' testator and another, and also had purchased a tract from testator under a contract, and had delivered to the testator the crops raised by him on that tract, evidence at the accounting to determine the amount due for the purchase of the land held to show that the account kept by testator in the name of the firm contained many, but not all, of the items of the account between the testator individually and defendant, so as to sustain a judgment awarding defendant certain credits appearing on that account, and also awarding him claims not appearing on the account, with the exception of certain items of credit which had apparently already been allowed to him.

JOHN C. WORSHAM and CLAY & CLAY for appellants.

VANCE & HEÏLBRONNER and W. P. McCLAIN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

For many years prior to 1911, A. S. Nunn and Marion Duncan, under the firm name of "Nunn & Duncan," had been engaged in farming on a large scale in Henderson county. From 1900 to 1911 the appellee, William Porch, was a tenant of the firm, farming on the shares. On November 13, 1911, Marion Duncan and his wife executed a deed to Porch to a farm of about 94 acres, which adjoined the lands owned or controlled by Nunn & Duncan, and upon a part of which Porch was their tenant. The land conveyed to Porch was owned individually by Duncan, and the consideration therefor was $5,000.00. The deed, however, states as the consideration "$1.00 and other considerations in hand paid, the receipt of which is hereby acknowledged, and $4,200.00 due and payable in seven equal annual installments of $600.00 each." which were to bear interest at the rate of 6% per annum from date until paid, payable annually, and were to be a lien upon the property.

Duncan died testate in 1918, and appellants, his widow and daughter, having qualified as his executrices, instituted this action against Porch to recover judgment for the amount of the seven notes, less a credit of $190.69 of date August 26, 1912, with interest and costs, and to sell the land in satisfaction thereof.

Porch answered, denying that he owed anything on the notes, and pleading payment in full. He further alleged that from his purchase of the land in 1911 until a short time before the death of Duncan in 1918, he had each year raised upon this tract and other lands owned by him, hogs, cattle, corn, wheat, and other crops, which he had sold and delivered to Duncan, or, if sold to others,

the proceeds were delivered to Duncan, upon agreement that Duncan would keep a true account thereof and apply same to appellee's notes, and pay any excess to him; that there had never been any settlement of these accounts, and that upon a settlement a large amount of money would be due to the defendant from Duncan; and he prayed judgment for any amount that upon an accounting might be found due him in excess of the amount necessary to satisfy his notes.

Plaintiffs, by reply, traversed all these allegations.

The matter was referred to the master commissioner, with directions to hear proof and to audit and report the accounts between the parties. The master's report showed an indebtedness of Duncan's estate to Porch amounting to $1,203.77 in excess of the amount of the notes and interest. The master further reported:

"It is clearly established that Porch raised about 750 bushels of wheat on his place in the year 1912, and that Mr. Duncan received the proceeds therefrom, and that Porch should be credited by the proceeds of this wheat; but there being no proof to show the market value of wheat that year, I am unable to arrive at its value."

The appellants filed exceptions to each item allowed appellee in the report, and appellee filed an exception to so much thereof as made no allowance to him for the 750 bushels of wheat raised in 1912 and referred to above. The court overruled all of the exceptions of the appellants, but sustained that of the appellee and allowed him $375.00 for this wheat, and entered judgment in accordance therewith.

For reversal of that judgment the appellants complain:

(1) That the court erred in permitting appellee to retake his deposition after the taking of all the other proof had been completed; (2) that the court erred in allowing appellee $375.00 or any sum for the wheat raised in 1912, in the absence of proof of its value, and (3) that the findings of the commissioner, and the decree of the court sustaining them, upon all other items allowed appellee were unsupported by and contrary to the evidence.

1. The burden of proof was upon appellee, and to sustain same he testified from memory about the character, size and value of the crops he had raised and sold to Duncan, and the crops he had sold to others for which Duncan had been paid during the years 1911-1918 and for which he sought to charge Duncan's estate. He in-

troduced witnesses whose evidence corroborated, or tended to corroborate, his evidence as to particular items.

Appellants then introduced evidence, including books kept by Duncan, of transactions with appellee for these years, which they claimed covered the transactions for which appellee was claiming credit and which showed, if this was true, that appellee had received credit for all that was due him, and there was nothing to be credited upon his notes for the land because of any of the transactions about which he had testified.

In support of his motion to be permitted to retake his own deposition, he filed an affidavit stating that he was an uneducated negro, that he had kept no books of his transactions with Duncan or with the firm of Nunn & Duncan, that the book accounts introduced by appellants' witnesses covered only his transactions with the firm of Nunn & Duncan, and that his recollection had been refreshed and clarified since he had given his original deposition and that the matters about which he had testified and for which he claimed credit were not included in his accounts with the firm of Nunn & Duncan, kept by Mr. Duncan, but were separate and distinct therefrom.

Under these circumstances, we do not think the court abused a sound discretion in permitting appellee to retake his deposition, even if his evidence in the second deposition had been evidence in chief. As a matter of fact, however, nearly all of that evidence was competent in rebuttal, since, except as to a few items, its effect is simply to prove that the items about which he had testified, and for which he was seeking credit, were not included in the book of accounts, as appellants' witnesses had testified. Much of this evidence, it is true, related to transactions with decedent, which would have been incompetent in chief, but which was rendered competent in rebuttal of the testimony for appellants of decedent's executrices, his widow and daughter. But even if this evidence had been incompetent, there was no objection to its introduction, and the objection to it now is that all of it was incompetent because the court erred in permitting appellee to retake his deposition.

Upon the original deposition of appellee, objections to many questions and answers were interposed, to which exceptions were later filed, and most of these objections were sustained by the court, and such as were not sustained were properly overruled.

We are therefore of the opinion that there is no merit in the contention that the court erred in permitting appellee to retake his own deposition, or in the objection now made to the competency of such evidence.

2. The contention that the court erred in allowing appellee $375.00 for the wheat raised in 1912 is also, we think, without merit. Although there was no evidence to show the value of wheat that year, the evidence did show the value of wheat for the years 1911 and 1913, and the court valued the 1912 crop of wheat at only about one-half of its value as shown by the evidence for those years, and of this appellants can have no just ground of complaint, as this court has often held that after the character and quantity of common products of the soil, or ordinary services, have been established by witnesses, a jury, without further proof, may determine their value from their general knowledge of such matters. Morgan v. Wood, 3 Ky. L. R. 391; L. C. & L. R. R. Co. v. Ramsey, 3 Ky. L. R. 385; Hargett v. Bracken Co., 3 Ky. L. R. 255, and E. T. V. & G. R. R. Co. v. Adams, 14 Ky. L. R. 862.

And in the case of Raum v. Winston, 3 Metc. 127, this principle was applied upon submission to the court without a jury, of a common law issue as to the value of services. In the course of the opinion, upon authority of Craig v. Durrett, 1 J. J. Mar. 366, it is said:

"Courts must act, if governed by reason and common sense, upon the presumption that jurors are acquainted with the ordinary business of society, and that whenever it can be rationally inferred, from the facts, that the jury could, from such knowledge, come to a correct conclusion as to the amount of damage, their verdicts should not be controlled by the courts, for want of evidence."

Continuing the court says:

"This principle, as well as the reasoning in support of it, applies with manifest propriety to the case before us. Judges, as well as jurors, must be presumed to be acquainted with the ordinary business of the country—especially when invested, as in this case, with the powers and duty of a jury—and there is certainly nothing in the record to authorize the inference that the value of the services sued for, as fixed by the judgment, was the result of any want of such knowledge."

This principle is quite as applicable, we think, to the case at bar, and appellants certainly have no right to complain that the court, in the absence of proof of the

value of wheat for the year 1912, fixed it at one-half of its proven value for the years 1911 and 1913.

3. Appellee, in his first deposition, did not make it clear that the items for which he claimed credit against Duncan alone were separate and distinct from his transactions with the firm of Nunn & Duncan, or that such was his contention. In fact, except for his second deposition, there would be but little evidence upon which to sustain a holding that the matters were so treated by the parties, and yet this is necessarily the view of the evidence upon which the findings of the master and the judgment of the chancellor are based.

During all of this period from 1911 to 1918, appellee was farming on the shares for the firm of Nunn & Duncan, and at the same time growing crops upon the land conveyed to him by Duncan. Duncan was attending exclusively to the business of Nunn & Duncan, in so far as Porch had any connection therewith, and Porch and Duncan made frequent settlements of their accounts as shown by the accounts kept by Duncan, and while these accounts were kept in a book styled "Accounts of Nunn & Duncan," these were the only records of any transactions between Porch and Duncan which Mr. Duncan kept, although prior to the sale of the land to Porch, Duncan had kept a separate account for this farm owned individually by him.

Hence we think appellants' evidence tends to prove, as they contend, that these accounts show not only appellee's transactions with the firm of Nunn & Duncan, but with Duncan as well, while, as heretofore stated, appellee contends, as he testified in his second deposition, that they pertain only to his dealings with the firm. He admits that the settlements recorded in this book are correct as to his transactions with the firm, and that he never presented, at these settlements, his claims against Mr. Duncan individually. Besides, it was shown for appellants that after the death of Duncan, appellee made no claim to his executrices for any of the items of indebtedness now asserted, but upon the other hand acknowledged his indebtedness to Duncan's estate for the amount of his notes, and promised to try to raise the money and pay same. They also proved by William Elliott, the president of a bank in Henderson, that before the filing of this suit, and after the death of Duncan, appellee applied to Elliott's bank for a loan of $4,000.00, which he said he owed to Duncan's estate, and that he desired to use in

paying off the notes he had executed to Duncan for this land.

Appellee does not deny these statements attributed to him, but says they were made in the belief that he could not prove his accounts against Duncan, and in ignorance of how the accounts between them stood, as he had no record thereof.

We do not regard these admissions by appellee as conclusive against him, as under the circumstances he might well have made them in the belief that it would be futile for him to attempt to establish his accounts without record thereof, and that it would be better for him to pay his notes without litigation.

We would therefore be inclined to accept the master's findings and the court's affirmation thereof as conclusive, if it were not for the fact that, although based upon the idea that the accounts kept by Duncan covered only appellee's transactions with the firm of Nunn & Duncan, several items are taken from those books as the basis for credits to appellee, and other items are credited to appellee which are clearly shown to have been credited to him on those books. If the books are to be held as relating only to appellee's accounts with the firm of Nunn & Duncan, it is apparent that appellee should not receive credit therefrom in his settlement with Duncan's estate.

If, upon the other hand, those books covered the entire transactions, then appellee should not only receive credits shown thereby, but he should be charged with the money credited to him therein.

Our view of the evidence, and we think this was really the view of the chancellor and his commissioner, is that in the main these books do apply to the transactions between Porch and the firm of Nunn & Duncan, but that they contain some of the items between Porch and Duncan individually, but do not contain many of such items.

We therefore think that the court was justified in allowing appellee all of the items allowed to him, except such as are shown to have been credited to appellee in those accounts, and except as to the item allowed for wheat raised in 1911 and before appellee bought the land from Duncan, which we think is shown with reasonable certainty to have been included in the $800.00 cash payment made by Porch in the purchase of the land.

Such a consideration of the evidence renders erroneous the allowance to appellee of the following items allowed him by the master and the court:

1911—One-half of the proceeds of 922
      bushels of wheat ...............................$461.37
      Interest on same from November
      4, 1911, to date of settlement .......... 247.29
                                        $708.66

1912—Appellee was allowed $300.00 as
      proceeds of 40 head of hogs, and
      $88.00 for hay. This should have
      been reduced, we think, by the
      $190.69 credited as of date August
      26, 1912, upon one of his notes, as
      it is not shown how otherwise he
      was entitled to this credit, and it
      is only fair to assume that it was
      a part, at least, of what he has
      shown as the total to which he
      was entitled to credit for that
      year. Counting interest on this
      sum to the date of settlement, as
      was done with all items, necessi-
      tates a reduction of the total al-
      lowed appellee for this year,
      amounting to .......................................... 280.29
      Also the following for which ap-
      pellee appears to have received
      full credit in the Nunn & Duncan
      accounts:
1913—Allowance for 45 head of hogs...... 112.50
      Interest ................................................... 46.12
                                   158.62
1914—Allowance for 45 head of hogs ...... 112.50
      Interest ................................................... 39.37
                                   151.87
1916—Wheat crop ........................................ 900.00
      Interest on same .................................. 207.75
                                   1,107.75

    Recasting the accounts as above indicated, and adjust-
ing interest to October 7, 1920, the date of the master's
report, leaves a net balance due appellants on that date
of $371.54, for which, with interest thereafter, and costs,
they should have been given judgment, together with an
order to sell a sufficiency of the land to satisfy same.

    Wherefore the judgment is reversed with directions
to enter in lieu thereof one in accordance herewith.