# Carmichael v. Old Straight Creek Coal Corporation et al.

# Howard et al. v. Cary-Glendon Coal Company et al.

(Decided December 13, 1929.)

JAMES M. GILBERT and E. N. INGRAM for appellants.

N. R. PATTERSON and M. T. KELLY for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Affirming in part and reversing in part.

Daniel Howard, a resident of Bell county, Kentucky, died in September, 1900, the owner of a large boundary of land on Straight creek in that county. He left surviving him a widow and 13 children. In 1901, by a proceeding in the Bell county court, the major portion of the land was partitioned, dower allotted to the widow, a portion allotted to each of the children, and deeds executed to them by a commissioner. On July 31, 1905, the widow and all the children executed a lease of the entire boundary to E. N. Ingram for the purpose of mining and removing the coal therefrom, and to this end granted to Ingram the right to use such portions of the surface and such of the standing timber as was necessary to be used in the mining and removal of the coal. That lease and the rights under it, by mesne assignments, have now vested in appellee Cary-Glendon Coal Company, under which the appellee Old Straight Creek Coal Corporation is now, and has been for some years, mining and removing the coal. The lease to Ingram was made without any mention of, or regard to, the partition made in 1901. It was a joint lease of the entire boundary, as a single tract, under a general description of the whole, in which the boundary was described by reference to the lands or lines of abutting proprietors. On August 23, 1905, less than a month after its execution, Ingram assigned the lease to Straight Creek Coal Mining Company, a corporation. That company opened the mines, built the railroad switch to the land, erected tipples, inclines, commissary and other buildings, including dwelling houses for miners. The boundary covered by the lease

lay on a branch of Straight creek, called "Howard's Branch," and it was believed by the parties to the lease and by the corporations to which the lease was assigned that the boundary extended to the tops of the dividing ridges on both sides of the branch and around the head of the branch, including all the watershed of Howard's branch. However, some time after mining operations on the land commenced, a suit which had been pending for more than 20 years in the Bell circuit court, wherein J. J. Gibson et al. were plaintiffs and Daniel Howard was defendant, and which involved about 430 acres of the Howards' land on Howard's branch, was determined by way of a compromise, and the Gibsons, under a patent superior to any title held by Daniel Howard, took about 430 acres of the Howard land embraced in the Ingram lease. See Howard v. Straight Creek Coal Co., 140 Ky. 700, 131 S. W. 804, 807. In 1906 a predecessor in title of appellees purchased this 430 acres in fee from the Gibsons, and about 1922 appellee, or a predecessor in title, began to mine and remove coal from it, bringing the coal out over the Howard land.

On January 30, 1928, the appellant Lucy Carmichael instituted this action against Old Straight Creek Coal Corporation to recover damages in the sum of $5,000 on the ground that the coal from the Gibson land is brought over, and the refuse material and water from it are dumped on, that portion of the Howard land allotted to her in the partition proceeding, and for an injunction to prevent the continuation of those practices. The other appellants, Noah Howard and others, her brothers and sisters, who had been brought into the action by an amended answer and cross-petition of the appellee Old Straight Creek Coal Corporation, filed an answer, counterclaim, and cross-petition, by which they denied the right of Lucy Carmichael to recover for herself alone on the cause of action asserted in her petition, and then by an independent action styled "Noah Howard, etc., v. Cary-Glendon Coal Company, Old Straight Creek Coal Corporation, and Lucy Carmichael," sought to recover damages upon the same grounds asserted by Lucy Carmichael in her suit, and, in addition thereto, to recover for unpaid royalties for coal mined and removed from the Howard land, to recover for timber cut and removed from the Howard land and used on the Gibson land, and to recover damages by way of rents for the use and occupancy of houses on the Howard land by miners working

on the Gibson land, and for an injunction to prevent a continuance of such acts by appellees, and, in addition, asserted that any recovery, in either or both actions, should be for the joint benefit of all the heirs, in the proportion to the interests of each in the leased boundary, and in this connection alleged that the interest of Lucy Carmichael was one-third interest in the entire boundary which had been allotted to her as lot No. 9 in the partition proceedings, two-elevenths interest in lot No. —— allotted to Wilson Howard, two-elevenths interest in lot No. —— allotted to Abigale Howard, one-seventh and two-elevenths of one-seventh of lot No. —— allotted to America Howard, and two-elevenths of one-fifth interest in lot No. —— allotted to Katherine Howard.

The two actions were consolidated in the court below and were referred to a commissioner, to hear proof and report upon the issues made by the pleadings in accordance with the proof heard. The report subsequently made by the commissioner was confirmed, and a judgment rendered in accordance with the commissioner's report, by which it was adjudged that appellants were not entitled to injunctive relief; adjudging that appellants recover 90 per cent. of $633.33 back royalties for coal mined from the Howard land; adjudging to appellants 90 per cent. of $6,230.58 for 462,265 tons of coal mined from the Gibson land and transported over the Howard land, at the rate of 1½ cents per ton; adjudging that sum in satisfaction of all damages sustained and to be sustained by the dumping of refuse material and draining water from the Gibson land on the Howard land, and for timber taken hereafter, from the Howard land and used on the Gibson land, and for the use and occupancy of the miners' houses on the Howard land by miners working on the Gibson land; further adjudging that appellee should continue to pay 90 per cent. of 1½ cents per ton for all coal thereafter transported from the Gibson land over the Howard land, and adjudging to Lucy Carmichael one-sixth and to the other appellants jointly five-sixths of this recovery. The judgment limiting appellants to 90 per cent. of the sums recovered is based upon a contract between the parties, growing out of appellees' purchase of certain interests in the leased premises, and because of which it was agreed they might retain 10 per cent. of all royalties arising under the lease. Complaining of that judgment, the plaintiffs in each action have prosecuted separate appeals.

Appellees do not claim the right to transport coal from the Gibson land over the Howard land, or to dump refuse material or drain water from the Gibson land on the Howard land, as rights granted by the lease to Ingram, but insist (a) that appellants represented, at the time the lease was executed, that they owned the entire boundary of land within the watershed of Howard's branch, including the 430 acres afterwards recovered by the Gibsons; that the mines were planned, laid out, and opened in conformance with the lay of the entire boundary, and with the view of operating the whole in the most economical and workmanlike manner, so as to be able to remove the maximum amount of the coal thereon, and to this end a large sum of money had been expended in development; that because of these representations and the large expenditure of money induced by them appellants are estopped to deny to appellees the rights contended for, or to an injunction to prevent the exercise of them; (b) that the amount fixed by the judgment is reasonable and ample compensation to appellants for the additional servitude to which their lands are subjected.

The opinion in the case of Howard v. Straight Creek Coal Co., supra, is conclusive of contention (a). In that case it was insisted by the Straight Creek Coal Company, a predecessor in title of appellees, that the Ingram lease did not embrace the Gibson land, while for the Howards it was insisted that the lease did embrace the Gibson lands. Concerning these contentions the court said:

"It is insisted that, the coal company having taken possession of the land embraced by the lease to Ingram, it could not, without surrendering it, buy in an outstanding title to the prejudice of the Howards. The Ingram lease did not describe the land by metes and bounds. It simply gave the names of the adjoining proprietors and called for the Gibson line. It did not embrace any land that belonged to the Gibsons. When the coal company bought that lease, there was nothing on the face of it to apprise the purchaser that the Howards were claiming any of the land within the Gibsons' claim; and the coal company by virtue of that lease took no title to any land that the Gibsons owned. The question of estoppel, therefore, cannot be made."

(b) It may be conceded that 1½ cents per ton is fair and reasonable compensation for the right and priv-

ilege of transporting coal from the Gibson land over the Howard land to the tipple on the Howard land. The only proof on the subject is to the effect that the sum usually paid for such privilege is from 1 cent to 2 cents per ton. However, the lease contains no provision allowing the transportation of coal from another tract of land over the leased premises, and fixes no compensation therefor. All the rights granted by the lease are to be exercised solely in the mining and removal of the coal from the premises described in and-granted by it. Obviously the rights now contended for by appellees, and secured to it by the judgment appealed from, can only be acquired by contract; and it is too well settled to require citation of authority that the court is without power to alter a contract by construction, or to make a new contract for the parties. It can only interpret the contract made.

As to the use of the surface of the Howard land for transportation of coal mined on the Gibson land, in the absence of a contract, the question is no longer an open one in this jurisdiction. In the case of Moore v. Lackey Mining Co., 215 Ky. 72, 284 S. W. 415, 417, 48 A. L. R. 1402, the coal company owned and operated leases of two adjoining tracts of land, one of which tracts was owned by Hays and the other tract by another person. By means of a breakthrough, arising from the developments on both tracts, the underground workings were joined, and thereafter the company carried the coal from both tracts to the tipple on the Hays tract, where it was screened and loaded in railroad cars. The appellants, who were heirs and successors in title of Hays, protested against this practice, without avail, and finally sought an injunction against the company to prevent it. The circuit court denied the injunction, but on appeal the judgment was reversed, and in the course of the opinion this court said:

"Appellee claims the right under the Hays lease to bring the coal from its adjoining lease to the surface through the shaft or entry or opening on the Hays lease, and there by means of the structures and equipment on the Hays lease to clean, screen, and load it for market. It will be observed that under the lease in question the lessors granted unto the lessees 'all the necessary rights and privileges to the successful mining of this coal.' By that particular language the lessees' right to the use of

the surface was confined to such rights as might be necessary to the successful mining of 'this' coal, clearly referring to the coal on the particular tract of land described in the lease. . . . Appellee admits having connected the two mines by extending the underground passages from one lease to the other, and that it has been removing, and, unless prevented, will continue to remove, the coal mined from the adjoining lease through the opening to the surface of the Hays lease, and has been cleaning, screening, and loading it by use of the structures upon the Hays tract of land, and intends to continue to do so. The lease in question granted to it neither expressly nor by implication any such right. The chancellor erroneously refused the injunction sought herein and dismissed appellants' petition.''

In that case the coal company relied upon the cases of Consolidated Coal Co. v. Schmisseur, 135 Ill. 371, 25 N. E. 795; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293, 22 A. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544; Westerman v. Pa. Salt Mfg. Co., 260 Pa. 140, 103 A. 539, 15 A. L. R. 943; Moore v. Indian Camp Coal Co., 75 Ohio 493, 80 N. E. 6; New York, etc., Coal Co. v. Hillside, etc., Iron Co., 225 Pa. 211, 74 A. 26, and Wadsworth Coal Co. v. Silver Creek Mining Co., 40 Ohio St. 559, to sustain its contention that it, under the lease in question, had the right to transport over the surface, and put over the tipple on the Hays lease, the coal mined by it from the adjoining tract of land. But, as is pointed out in this court's opinion, those cases deal solely with the question of the right of the owner of the fee in coal, or of a lessee of land having the right to remove the coal in and under it, to use the underground passages made by removing coal under one of the tracts to transport coal from the other tract; and in those cases the doctrine was established that one who owns the fee in coal, or has the right to remove it as lessee, has the right, during the time that he may, under his deed or lease, mine coal from a given tract of land, to use the underground passages made by removing the coal from other lands owned by or under lease to it. However, that question was not presented in the Lackey Mining case and it was not therein determined. The court expressly said:

''Here the question is not presented, and, consequently, we will not establish the principle for this

jurisdiction that the owner or lessee of coal underlying a tract of land may use the underground passages made in the course of the mining operations for transporting coal from one part to another of adjacent tracts of land.''

And since in this case it is not necessary to determine that question, it is not here determined. While the proof shows that for about 600 feet underground passages on the Howard land are used for the transportation of coal mined on the Gibson land, it is also shown that this Gibson coal reaches the surface on the Howard land and is thence transported over the surface of the Howard land to the tipple which stands on the Howard land.

The lease executed by appellants to Ingram provides: ''The parties of the second part shall have the exclusive privilege of mining coal without (within) the boundary above described and designated and to use so much of the timber on said tract of land as may be necessary for mining operations and purposes, for the construction of roads and buildings, mining houses and other structures necessary for mining purposes on said tract of land.''

While that clause grants the right to use the timber on the land leased, it also places a limitation upon the extent of that use. The right granted is to ''use so much of the timber on said tract of land . . . as may be necessary for mining purposes on said tract of land.'' Under that clause appellees have no right to take or use from the Howard land any timber not necessary, or any more timber than is necessary, for mining purposes on that land, and, consequently, they are without right to take any timber whatever from the Howard land for use on the Gibson land; such a taking is a trespass and to prevent which, or a continuation of which, appellants may have injunction.

The dumping of slate, rock, and dirt, and the draining of water, from the Gibson land on the Howard land, cannot be justified under any provision of the Ingram lease. These acts constitute an injury and a trespass, which may be prevented by injunction. Moore v. Lackey Mining Co., supra; Salyers v. Salyers, 138 Ky. 137, 127 S. W. 749; Peak v. Hayden, 3 Bush, 125.

4. The judgment appealed from awards appellants the sum of $6,230.58 as damages for the trespasses com-

plained of, and apportions this sum between them as one-sixth to Lucy Carmichael and five-sixths to the other appellants, to be divided between them in the same proportion as they have heretofore divided the royalties. This was error. The transportation of the Gibson coal, the dumping of the refuse material and draining of water from the Gibson land, and the taking of timber from the Howard land are not rights arising under or out of any provision of the Ingram lease, but are trespasses committed against and upon the particular portions of the Howard land, as shown by the partition of it, over which the coal was transported, the refuse material dumped and water drained, and from which the timber was taken. The record before us shows that the coal was transported over the portion allotted to Lucy Carmichael and the portion allotted to John Howard; that the refuse material was dumped and water drained only on the land of Mrs. Carmichael; and there is no proof whatever as to what portions or lots according to the partition the timber taken came from. While the lease, in so far as it relates to mining and removing the coal, disposition of the rents in the form of royalties therefor and other rights and privileges arising under its terms, is a joint grant on the part of all the appellants, they are nevertheless separate and independent landowners as to the portions allotted and conveyed to them, respectively, pursuant to the partition proceeding, and as to the trespasses here complained of stand in the same attitude they would occupy as against any other trespasser. Consequently, the recovery for the transportation of the Gibson coal, the dumping of the refuse material, draining of water, and taking of timber must be limited to those heirs who, and those portions of the boundary which, have suffered from the trespasses. Inasmuch, therefore, as this sum was erroneously adjudged as damages for all the trespasses complained of, and to all the appellants, on the return of the case to the court below it will again refer it to the special commissioner or to the master commissioner, to hear proof and determine over and upon which separate lots in the partition of the Howard land coal was transported from the Gibson land, and upon which refuse material and water from the Gibson land was dumped and drained, and from which timber was taken, and the amounts thereof as to each, and award the damages to the owners thereof in the proportion to which each is entitled.

142

5. The recovery for back royalties in the sum of $633.33, less 10 per cent. was adjudged to the appellants in the same proportions as the recovery for damages. This was error. This sum should be apportioned in the same manner as royalties hitherto paid have been apportioned. Since the record shows that appellees are yet mining and removing coal from the Howard lands under the Ingram lease, that the coal in lots Nos. 11, 12, and 13 as established and allotted in the partition proceeding, is yet untouched, but that this portion is connected to the remainder by a long narrow neck of land not wide enough to admit of development within it and that this coal must be reached and brought out over the Gibson land from which development work is rapidly approaching these lots, and it is shown by mining engineers that the coal in lots Nos. 11, 12, and 13 is the most valuable coal underlying the Howard boundary, the fact that some of appellees' employes who work on the Gibson land reside in houses on the Howard land imposes no hardship upon appellant so long as appellee is actually mining and removing appellant's coal.

Wherefore, as to the amounts awarded for back royalties and for damages, the judgment is affirmed. In so far as it denied injunctive relief to prevent the transportation of coal from the Gibson land over the Howard land, to prevent the dumping of waste material and draining of water from the Gibson land on the Howard land, to prevent taking of timber from the Howard land for use on the Gibson land, and apportioned the back royalties and damages, the judgment is reversed, for proceedings consistent with and as directed in this opinion.