## Cary-Glendon Coal Co. v. Carmichael.

(Decided Feb. 12, 1935.)

412

N. R. PATTERSON for appellant.

E. N. INGRAM for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This is a sequel of Carmichael v. Old Straight Creek Coal Corporation, 232 Ky. 133, 22 S. W. (2d) 572, and Howard v. Carmichael, 237 Ky. 462, 35 S. W. (2d) 852. As there disclosed, it was adjudged that the Straight Creek Coal Corporation and the Cary-Glendon Coal Company should pay three certain heirs of Daniel Howard for damages for trespass upon or compensation for the use of their land in the operations of a mine upon the adjoining property, called the "Gibson land." The character and extent of the use is described in the opinions. The compensation calculated on the basis of 1½ cents per ton for the coal handled on and hauled over the property was approved. Under the evidence in the last case as to the use or the trespass upon the tract of each heir, the recovery was divided; Mrs. Lucy Carmichael receiving 55 per cent. of the whole.

This suit was brought by Mrs. Carmichael alone against the coal companies, claiming damages for trespass of the same character from January 1, 1928, to May 12, 1930, the period following that covered by the former case. By agreement of parties the case was transferred to equity and referred to a special commis-

sioner. He reported that there had been a trespass upon the plaintiff's property consisting of five separate items, viz.: (1) The erection of roads, switches, etc.; (2) cutting and removing timber; (3) dumping of slate, water, etc.; (4) destruction or injury to a spring; (5) hauling coal across her land. The commissioner reported that the proof was not sufficient to justify a finding against the defendants except for the timber and hauling. For the former item he allowed $250, being for 50,000 feet of timber at $5 per thousand. For the hauling he allowed $1,847.23 upon the basis of 123,149 tons of coal at 1½ cents per ton. Upon the trial of exceptions to the report, the judge disallowed the claim for the timber and awarded $1,847.23 for hauling, ''and all of the matters complained of in the petition.'' Judgment was rendered against both companies, but only the Cary-Glendon Coal Company appeals. Mrs. Carmichael has a cross-appeal.

The argument is made that the suit is one for trespass and is not upon an implied contract to pay the reasonable value of the use of the land, and that there was a failure of proof on the proper measure of damages for trespass, the slight evidence relating to the value of the use or occupancy. On the cross-appeal Mrs. Carmichael is insisting that the former case and the conclusions with respect to the amount of damages must be disregarded in this independent suit; that 1½ cents per ton is too little, as the evidence showed that it was worth at least 3 cents a ton and might well have been at the rate of 5 cents a ton.

The evidence is indeed meager and most unsatisfactory. As to the claim for 5 cents a ton, Lee Carmichael, the husband and business agent of the plaintiff, testified simply that he had made a contract with the coal companies ''for 5 cents a ton for all the coal they hauled over'' his wife's property. But this testimony is worth nothing, for the contract referred to is in the record and contradicts him. It was developed that after all the litigation had closed, a contract was made between the coal companies on the one side, and the Howard heirs on the other, whereby the original boundary of the Howard land, together with the Gibson land, should thereafter be considered as a unit for mining purposes, and the heirs jointly should receive 5 cents a ton for all coal mined. It appears that by this time the entries had reached the Howard lands and were

not exclusively or principally upon the Gibson land. This compensation included royalty and the entire use of the whole boundary, and Mrs. Carmichael receives only 18 cents out of every dollar. The 5 cents per ton cannot be regarded as the measure of damage only for the hauling and handling of coal from the Gibson land over her property during the time involved. Should we consider her view, then she would be entitled only to 18/100 of 5 cents, or 9 mills per ton. So she cannot complain because the court awarded her more. As to the claim for 3 cents per ton, we have only the evidence of Henry C. Taylor, who had experience as a mine foreman for the companies and who seems to be a nephew of the plaintiff. He testified that the transportation of the coal touched some property of John C. Howard; that he was acquainted with the prices which had been paid for the privilege of hauling over the property of another not leased, and from what he knew of the use made of the property in removing the coal from the Gibson land over the Carmichael land and dumping the slate thereon, the fair price would be 3 cents a ton. For several months of the period involved, the operating coal company sent checks to Mrs. Carmichael for the use of her property which were calculated upon the basis of 1½ cents per ton, less 10 per cent. which it contended it was entitled to because, as shown in the other opinions, it was the owner of an undivided 10 per cent. interest in all of the Howard land. These checks were returned by Mrs. Carmichael because, as stated in her letter, that 10 per cent. had been deducted, and for "other reasons."

The principal trespass in the respect proven was temporary, in that it could have been abated or discontinued at any time. The measure of damages in such cases is the depreciation in the rental value of the land during the period of occupancy if it is rented out, but if occupied by the owner it is the diminution in the value of the use of the property. Price Brothers v. City of Dawson Springs, 190 Ky. 349, 227 S. W. 470; Zella Mining Company v. Collins, 203 Ky. 178, 261 S. W. 1091. This property was under a coal lease to the defendants; but, as held in the first case, they had no right to use it in the operations of the adjoining property. Until the rights acquired under the lease were exercised, it may be well regarded that the surface of the land was occupied by the owner. As a matter of

fact, the evidence is that Mrs. Carmichael was living on the property at all times. And so was Henry Taylor, but in what capacity is not disclosed. There was, in a way, an interruption of her right of peaceful occupancy. Cf. Jefferson County v. Pohlman, 243 Ky. 556, 49 S. W. (2d) 344. So when the proof was directed to the value of the use to the defendants, it was substantially the proper measure of recovery. That was the measure approved for the same occupancy and use during the period prior to that covered by this suit.

The finding of the court in this common-law action must be regarded the same as a verdict of a properly instructed jury. Hence the only question is whether or not the conclusion is flagrantly against the evidence. We have related all of it. The defendants presented no evidence on the issue. What little we have is based upon the value of the use of the property, as stated, and that is fixed by the witnesses as 3 cents per ton of coal transported over it. Taking that strictly, the plaintiff, as she contends on the appeal, would be entitled to double the amount awarded. But that is not all. The defendants had tendered payment on the basis of 1½ cents per ton, and in declining acceptance the rate was not questioned by the plaintiff. Before trial, the parties had agreed for both royalty on the coal mined, and the use of the whole body of the Howard land, that the lessee should pay only 5 cents per ton and of this that Mrs. Carmichael should receive less than one cent. The trial court, of course, knew of the former judgments for the same character of trespass. It is a common rule that where jurors or a judge trying an issue of fact are familiar with values from personal observation or general knowledge, and there is reasonable room for a difference of opinion as to value, they need not accept as true or as conclusive the testimony, but may bring to their assistance their own knowledge and reach a different conclusion from that expressed by the witnesses. In Baum v. Winston, 60 Ky. (3 Metc.) 127, this principle was applied upon submission to the court without a jury of a common-law issue as to the value of services. In the course of the opinion, upon authority of Craig v. Durrett, 1 J. J. Marsh. 366, 19 Am. Dec. 103, it is said:

"Courts must act, if governed by reason and common sense, upon the presumption that jurors are acquainted with the ordinary business of

society, and that whenever it can be rationally inferred, from the facts, that the jury could, from such knowledge, come to a correct conclusion as to the amount of damage, their verdicts should not be controlled by the courts, for want of evidence.

"This principle, as well as the reasoning in support of it, applies with manifest propriety to the case before us. Judges, as well as jurors, must be presumed to be acquainted with the ordinary business of the country—especially when invested, as in this case, with the powers and duty of a jury —and there is certainly nothing in the record to authorize the inference that the value of the services sued for, as fixed by the judgment, was the result of any want of such knowledge."

See, also, Saylor v. Commonwealth, 185 Ky. 129, 214 S. W. 826; Duncan's Executors v. Porch, 198 Ky. 177, 248 S. W. 526.

The trespass being admitted and the extent substantially disclosed, at least as to the use for transporting the coal, we are unwilling to set aside the finding of fact by the court either as being too little or too much under the evidence.

Since this suit was by Mrs. Carmichael alone and the evidence was confined to the use of her property, she was entitled to the entire judgment and not to 55 per cent. only. That division in the former case was made because the use was of the property of two others also.

As to the claim for timber cut and removed: Lee Carmichael testified that there was some timber taken from the land but he couldn't say how much. Alex Carroll, a sawmill operator, stated that during 1928 he cut 50,000 feet for the defendant off of this land and that it was used in their Roth, Glendon, and Cary mines. It appears that there were some operations on part of the land belonging to some of the Howard heirs, but we are left in ignorance as to who the individual owner of that land was and how much was used. The witness stated that he did not know how much was used in the Gibson land mining operations which, as we understand, is called the Cary mine. The same indefiniteness regarding the timber which appeared in the other suit of Howard v. Carmichael, supra, is present in this record,

and we are constrained again to say that the evidence is too vague and uncertain to justify a judgment of recovery.

Judgment affirmed.