**BURKSHIRE TERRACE, INC., Appellant,**

v.

**Daniel C. SCHROERLUCKE et al.,
Appellees.**

Court of Appeals of Kentucky.

May 21, 1971.

R. D. McAfee, Clifford Duncan, Jr., Louisville, for appellant.

Freeman B. Blackwell, Louisville, for appellees.

PALMORE, Judge.

Burkshire Terrace, Inc., the subdivider and developer of a tract of land west of Manslick Road in Jefferson County, appeals from a judgment entered pursuant to a verdict awarding David Schroerlucke and wife $12,000 for damages allegedly inflicted on their property by surface waters flowing from the subdivision.

The appellant contends it was entitled to a directed verdict because the evidence showed conclusively that it had not tapped any additional watersheds or diverted waters onto the appellees' property that would not naturally have flowed there anyway. In this respect the instructions given by the court followed the law as stated in Wallace v. Schneider, 310 Ky. 17, 219 S.W. 2d 977 (1949), and Jarvis v. Cornett, Ky., 257 S.W.2d 524 (1953), and predicated liability upon the appellant's having "changed the natural course of water flow from its property so that water which normally would not have flowed onto the plaintiffs' property was caused to flow onto the plaintiffs' property." As pointed out in Commonwealth, Dept. of Highways v. Baird, Ky., 444 S.W.2d 541 (1969); Commonwealth, Dept. of Highways v. Watson, Ky., 446 S.W.2d 294, 297 (1969); and Land Development, Inc. v. Louisville Gas & Electric Co., Ky., 459 S.W.2d 150, 152 (1970); liability in such cases depends upon a balancing of the attendant factors of use and injury and may not be avoided upon the technicality that the upper owner has not tapped a new or additional watershed. Nevertheless, as we understand the evidence in this record there was categorical testimony that in changing the topography of its land the appellant did in fact cause to be cast on the appellees' property surface waters that did not flow there before.

The only other contention relates to the measure of damages. Appellee contends the proper measure is the difference in market value of the injured property before and after the injury, whereas the instructions given by the trial court authorized recovery "for the cost of repairs" to the appellees' house, not exceeding $12,000.

The appellee Daniel Schroerlucke testified that he had been in the building business for some 15 years. He said that the main damage resulting from the water coming onto his property from the appellant's premises was physical injury to his residence, which he could repair and restore at a cost of approximately $12,000 and thereby avoid further loss. It was his opinion that the value of his property as a whole was $34,000 before the damage and $18,000 thereafter. Later, however, when recalled for further cross-examination he gave the present market value of his house and lot, excluding a barn lot (which he had previously valued at $5,000), as $30,000. This apparent inconsistency with his previous testimony fixing the value of the whole property at $18,000 in its damaged condition was not pursued by either counsel, but we think it is obvious that his intention was to relate the value of the property excluding the barn lot to the $34,000 figure he had assigned to the property as a whole

*before* the damage, and that he was not saying the house and lot were worth $30,000 in their damaged state. The fair import of his testimony is that the difference in market value before and after was $16,000 but that by doing the repair and remedial work himself he could restore the property for $12,000.

There being no valuation testimony other than that of Mr. Schroerlucke, the instructions were correct in limiting recovery to the cost of repairs reasonably necessitated by the damage. The measure of damages for injury to real estate "is the cost of repair, if repair may be readily accomplished—or, if not, then the difference in market value before and after the alleged damage," Kentucky Stone Company v. Gaddie, Ky., 396 S.W.2d 337, 340 (1965), though in no case, of course, may the amount of recovery *exceed* the diminution in market value. In the latter respect, if the costs of restoration exceed the diminution in value they are presumptively unreasonable. Cf. State Property & Building Comm., etc. v. H. W. Miller Const. Co., Ky., 385 S.W.2d 211, 214 (1964) for analogy.

In response to the argument that damages in a case of this kind should be determined entirely on the basis of diminished market value because in that way the defendant could receive credit for whatever enhancement in value was conferred upon the plaintiff's property by the improvement (in this case, a street) which caused the damage, it is our view that although traditionally such enhancement is allowable in condemnation cases there is no authority for giving it any consideration in other types of litigation. Certainly a subdivider acquires no cause of action against surrounding property owners for benefits accruing to them by virtue of his developmental project, and we see no reason why he should have the effect of one in the form of an offset against a tort liability.

The judgment is affirmed.

All concur.