Gilbert ELLISON, Bonnie Ellison, Howard Sullivan and Agnes Sullivan, Appellants,

v.

R & B CONTRACTING, INC., and Lawrence Construction and Leasing, Inc., Appellees.

R & B Contracting, Inc., Appellant,

v.

Gilbert Ellison, Bonnie Ellison, Howard Sullivan, Agnes Sullivan and Lawrence Construction and Leasing, Inc., Appellees.

Lawrence Construction And Leasing, Inc., Appellant,

v.

Gilbert Ellison, Bonnie Ellison, Howard Sullivan, Agnes Sullivan and R & B Contracting, Inc., Appellees.

Nos. 1998–SC–0535–DG, 1999–SC–0296–DG and 1999–SC–0302–DG.

Supreme Court of Kentucky.

Aug. 24, 2000.

Rehearing Denied Dec. 21, 2000.

**68**

Kelly J. Brown, Curtis Harlan Hatfield, Covington, for Gilbert Ellison, Bonnie Ellison, Howard Sullivan and Agnes Sullivan.

H. Lawson Walker, II, Brown, Todd & Heyburn, Covington, Robert S. Walker, III, Brown, Todd & Heyburn, Lexington, Giles T. Hertz, Monohan, Hertz & Blankenship, Florence, Carl Edward Grayson, Brown, Todd & Heyburn, Covington, for R & B Contracting, Inc.

James G. Osborne, Osborne & Osborne, Edgewood, for Lawrence Construction and Leasing, Inc.

KELLER, Justice.

## ISSUE

This injury-to-property case between landowners and construction companies presents one primary issue and several lesser issues.

Landowners proved the cost of removing construction debris deposited on their property by the construction companies, but did not otherwise show a diminution in their property's value. The construction companies's expert witness, however, testified that the debris did not affect the property's value. The Court of Appeals set aside the jury's damage award and held that the trial court should have granted a directed verdict in favor of the companies as to the issue of damages when the plaintiffs failed to introduce direct evidence that the fair market value of the property had decreased. Were the construction companies entitled to a directed verdict on damages? Because we hold that the cost of removing the construction debris was sufficient evidence of diminution in property value, the trial court properly submitted the damages issue to the jury. Accordingly, we reverse the Court of Appeals and reinstate the jury's verdict and damage award.

## FACTUAL BACKGROUND

In 1991, the Kentucky Department of Transportation accepted a bid by Lawrence Construction and Leasing, Inc. (hereinafter "Lawrence Construction") to perform contracting services on a multi-year construction project to widen and re-build Kentucky Highway 17 in Northern Kentucky. Lawrence Construction sub-contracted with R & B Contracting, Inc. (hereinafter "R & B Contracting") for excavation work which included the disposal of waste materials (gravel, dirt, sand, and some paving) from Highway 17. R & B Contracting performed this work from approximately March of 1991 through December of 1992.

Gilbert and Bonnie Ellison and Howard and Agnes Sullivan (hereinafter, "the Ellisons/Sullivans"), the plaintiffs below, owned a piece of property fronting the reconstructed Kentucky Highway 17. The Ellisons/Sullivans sued Lawrence Construction and R & B Construction for trespass and alleged that the two companies, without the Ellisons'/Sullivans' consent, stored and serviced heavy equipment and deposited debris from the highway construction project on the Ellisons'/Sullivans' property.

At trial, the Ellisons/Sullivans introduced testimony that large pieces of concrete and blacktop, culvert pipe, dirt and

gravel were deposited on the property. An expert witness who had examined topographical survey maps estimated on the basis of changes in the property contours between 1985 and 1995 that approximately 14,500 cubic yards of material had been added to the property. Other testimony established that R & B Construction employees drained oil onto the property from some of the heavy equipment and that Lawrence Construction left behind paint removed during sandblasting of construction equipment. Based on testimony suggesting it would cost the Ellisons/Sullivans ten cents (10¢) per cubic yard to remove the material from their property, they asked for $145,000 in damages for the cost to return the property to its prior state.

Lawrence Construction and R & B Construction introduced testimony that the Ellison/Sullivans had given their permission both for the companies to store equipment on the property and for R & B to deposit materials from the highway excavation as fill upon the property. An R & B representative testified that, while his company deposited highway waste material on the Ellisons'/Sullivans' property, the volume of highway waste material involved was no more than 4,000 cubic yards.

The defendant construction companies also introduced the testimony of a real estate appraiser indicating that depositing waste material on the Ellisons'/Sullivans' property resulted in no diminution in the value of the property and that its fair market value, therefore, did not change between the time immediately before and after the alleged trespass. Lawrence Construction and R & B Construction also disputed the Ellisons'/Sullivans' figures regarding the cost of removing the material from the property and introduced testimo-

ny suggesting that the Ellisons/Sullivans could contract for the removal of the property at a price substantially less than ten cents (10¢) per cubic yard.

The jury found for the Ellisons/Sullivans on the trespass issue by deciding that both Lawrence Construction and R & B Construction had, "without the express or implied consent of the Plaintiffs, deposited landfill material on Plaintiffs' land." The next question on the special verdict form asked the jury:

> What sum of money do you find from the evidence is the cost of restoring Plaintiffs' land to substantially the same condition as immediately before the dumping of the landfill material by the defendants, as described in the evidence, not to exceed the sum of $145,000.00?

The jury answered $72,500 and apportioned ninety-five percent (95%) of the fault to R & B Contracting and five percent (5%) of the fault to Lawrence Construction. The trial court entered judgment in accordance with the jury verdict and adjudged R & B Contracting liable to the Ellisons/Sullivans for $68,875 and Lawrence Construction liable to the Ellisons/Sullivans in the amount of $3,625.

Before we address the specific legal issues before this Court in their current procedural posture, we feel it would be of benefit to the bench and bar to review the types of damages available to a claimant for injury to real estate. In cases such as the one before us, we have upheld two distinct types of damages: (1) if the injury to the property is permanent, the amount by which the fair market value of the property decreased immediately prior to and after the trespass;[1] but (2) if the injury to the property is temporary, the cost to return it to its original state.[2] We

---

1. *See, e.g., Island Creek Coal Co. v. Rodgers,* Ky.App., 644 S.W.2d 339, 345 (1983); *Middle States Coal Co. v. Hicks,* Ky.App., 608 S.W.2d 56, 57 (1980); *River Queen Coal Co., Inc. v. Mencer,* Ky., 379 S.W.2d 461, 464 (1964); *United Fuel Gas Co. v. Rowe,* Ky., 375 S.W.2d 264, 265 (1964); *Blue Diamond Coal Co. v. Press Eversole,* Ky., 253 S.W.2d 580, 582 (1952); *Nisbet v. Lofton,* 211 Ky. 487, 277 S.W. 828, 831 (1925); *Kentucky Traction & Terminal Co. v. Bain,* 161 Ky. 44, 170 S.W. 499, 501 (1914).

2. *See, e.g., Burkshire Terrace, Inc. v. Schroerlucke,* Ky., 467 S.W.2d 770, 772 (1971); *Ken-*

have distinguished between "permanent" and "temporary" injuries on the basis of the cost of restoration and have held that injuries to real estate are "permanent" where the cost to restore the property to substantially its original state exceeds the amount by which the injury decreased the property's value.[3] Reasonable restoration costs are an available remedy only in "temporary" injury cases where the property may be restored to its original state at a cost less than the amount by which the market value of the property decreased as a result of the trespass.

■■■■ As a practical matter, therefore, the amount by which the injury to the property diminishes its total value operates as an upper limit on any damage recovery. Claimants may receive restoration cost damages in injury-to-property cases only when compensation in the form of restoration costs is the least expensive way to make those claimants whole.[4] This Court's most recent opinions addressing the issue of the damages available in injury-to-property cases have sidestepped the "permanent" versus "temporary" distinc-

tion and focused on the way in which the amount by which the decrease in property value operates as a practical limit on the amount of recovery.[5] We reiterate today, however, that cost to repair damages are available only where the factfinder determines that the injury to the property may properly be characterized as "temporary" by finding that the property may be restored at an expense less than the total amount by which the injury decreased the property's value.

■■■■ Questions regarding the cost of repairing a particular injury to real estate and the extent of any diminution in fair market value of the real estate as a result of an injury are questions of fact. Accordingly, we hold that in future cases where a claimant seeks compensation in the form of repair costs for an injury to land, trial courts shall require the jury to find whether the injury may be repaired at a cost less than the diminution in the value of the property, and, if the jury finds otherwise, limit the claimant's recovery to the diminution in the value of the property. The following sample damages instruction tak-

tucky Stone Company, Inc. v. Gaddie, Ky., 396 S.W.2d 337, 340 (1965).

3. See Newsome v. Billips, Ky.App., 671 S.W.2d 252, 255 (1984) ("However, repair is unreasonable when its cost exceeds the difference in the before and after value." Id.); Island Creek Coal Co. v. Rodgers, supra note 1 at 345 ("The cost of repair is 'reasonable' only if it does not exceed the difference in fair market value before and after the injury." Id.); Edwards & Webb Construction Co., Inc. v. Duff, Ky.App., 554 S.W.2d 909, 911 (1977); Burkshire Terrace, Inc. v. Schroerlucke, supra note 2 at 772 ("[I]f the costs of restoration exceed the diminution in value they are presumptively unreasonable." Id.).

4. In Edwards & Webb Construction Co., Inc, supra note 3 at 911, the Court of Appeals explained the logic behind this rule in terms of an auto accident case in which one of the vehicles was "totalled":

Certainly, if one has a $400.00 automobile and sustains damages that would cost $1000.00 to repair, the vehicle is a total loss and an insurer, or tort-feasor, must pay only the total value.

. . .

A test of whether or not the property may be reasonably repaired is whether or not the cost of repair exceeds the difference in market value before and after the injury. If the cost of repairs (or rebuilding) exceeds the difference in the market value of the property before and after the injury, then such cost is manifestly unreasonable and the building may not be reasonably repaired at the expense of the tort-feasor, although repair is technically possible. Id.

5. Kentucky Stone Co. v. Gaddie, Ky., 396 S.W.2d 337, 340 (1965) ("[T]he measure of damages in this type case is the cost of repair, if repair may be readily accomplished——or, if not, then the difference in market value before and after the alleged damage." Id.); Burkshire Terrace, Inc. v. Schroerlucke, supra note 2 at 772 ["The measure of damages for injury to real estate 'is the cost of repair, if repair may be readily accomplished——or, if not, then the difference in market value before and after the alleged damage,' although in no case, of course, may the amount of recovery exceed the diminution in market value." Id. (citation deleted) ].

en almost verbatim from J. Palmore and R. Eads, *Kentucky Instructions to Juries,* § 39.12 (Anderson Publishing Co.1989) accomplishes this purpose:

INSTRUCTION NO. _____

If you find for P you will determine from the evidence and award [P] the *lesser* of the following two amounts:

    (A) the reasonable cost of restoring [P's] property to substantially the same condition as immediately before it was damaged by [ ].

    OR

    (B) the difference between the fair market value of [P's] entire property immediately before and immediately after the property was damaged, not to exceed _____.

    "Fair market value" is the price that a person who is willing but not compelled to buy would pay and a seller who is willing but not forced to sell would accept for the property in question.[6]

Because a jury could find that a particular injury to the property rights of a plaintiff resulted in no decrease in the property's fair market value, trial courts should, in appropriate trespass cases, also instruct juries that, even if the plaintiff suffered no actual damage as a result of the trespass, the plaintiff is entitled to nominal damages.[7]

■ Returning to the case before us, we note that each of the three parties sought review of the trial court's judgment in the Court of Appeals. The Court of Appeals denied the Ellisons'/Sullivans' request that the matter be remanded with instructions for the trial court to grant them injunctive relief and to submit the issue of punitive damages to a jury. Instead, the Court of Appeals reversed the judgment on the grounds that the trial court should have granted a directed verdict as to damages in favor of Lawrence Construction and R & B Construction at the close of the plaintiffs' evidence. The Ellisons/Sullivans sought discretionary review in this Court on the directed verdict issue,[8] and, after we granted discretionary review as to that

6. J. Palmore & R. Eades, *Kentucky Instructions to Juries,* § 39.12 (Anderson Publishing Co.1989).

7. *See Hughett v. Caldwell County,* 313 Ky. 85, 230 S.W.2d 92 (1950) ("It is the universal inference of the law that every unauthorized entry upon the land of another person results in some damage, though it may be nominal. Where there is actual injury, just compensation must be made." *Id.*); *Fletcher v. Howard,* 226 Ky. 258, 10 S.W.2d 825 (1928) ("The evidence was vague as to the amount of damage, but where a trespass has been committed upon the property of another, he is entitled at least to nominal damages for the violation of his rights." *Id.* at 826-7.). A jury instruction as to nominal damages in a case of this type may read:

INSTRUCTION # [Y]
    If you find for P, but if, and only if, you do not award P a sum in damages under Instruction No. _____, you will award nominal damages to P.
    "Nominal damages" are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he or she is entitled to compensatory damages.

Some authorities have suggested that a nominal damages award may support a further award of punitive damages. *See* Restatement (Second) of Torts, § 908, Comment c (American Law Institute 1978) ("Although ... ' the extent of the harm may be considered in determining their amount, it is not essential to the recovery of punitive damages that the plaintiff should have suffered any harm, either pecuniary or physical. Thus an award of nominal damages ... is enough to support a further award of punitive damages, when a tort, such as a trespass to land, is committed for an outrageous purpose, but no significant harm has resulted." *Id.*). As no question of punitive damages is properly before this Court, *see, infra* note 8, we do not address this possibility.

8. The Ellisons' Motion for Discretionary Review focused solely on the directed verdict issue and made no mention of the punitive damage and injunctive relief issues they raised before the Court of Appeals. Although those issues were briefed before us and addressed at oral argument, we find that neither the punitive damages nor the injunctive relief issue is properly before this Court. CR 76.20(3)(d).

issue, we granted discretionary review as to issues raised by R & B Construction before the Court of Appeals concerning the jury instructions, presentation of evidence in the trial court, and whether the construction companies were entitled to directed verdicts on the damages issue at the close of all the evidence. After carefully reviewing each issue, we reverse the Court of Appeals and reinstate the trial court's original judgment.

## JURY INSTRUCTION ISSUES

R & B Construction argued before the Court of Appeals that the jury instructions submitted by the trial court were erroneous in that they: (1) failed to instruct the jury as to the proper measure of damages and allowed the jury to return a damage award in excess of diminution of fair market value, and (2) failed to include a requested instruction on the defense of estoppel. As the Court of Appeals reversed the judgment on other grounds, its opinion did not address issues relating to the jury instructions, and this Court granted R & B's cross-motion for discretionary review in order to do so.

■ Although we have addressed the proper measure of damages in a case of this type and suggested instructions which will fully inform the jury as to its role as factfinder, we do not believe that R & B Construction preserved this error for our review in the trial court. Civil Rule 51 provides litigants with an opportunity to preserve objections to jury instructions:

(1) At any time before or during the trial, the court may direct the parties to tender written instructions. At the close of the evidence any party may move the court to instruct the jury on any matter appropriate to the issues in the action.

(2) After considering any tendered instructions and motions to instruct and before the commencement of the argument, the court shall show the parties the written instructions it will give the jury, allowing them an opportunity to make objections out of the hearing of the jury. Thereafter, and before argument to the jury, the written instructions shall be given.

(3) No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.[9]

On September 29, 1995, the trial court set the matter for trial by jury and ordered counsel for the parties to "furnish the Court and opposing counsel with a trial brief at least five days prior to [trial] containing ... requests for instructions, subject to the right to supplement such on matters that cannot reasonably be anticipated." On December 1, 1995, Lawrence Construction filed its trial brief, but included no proposed instructions as to the measure of damages but "respectfully submitted that at the conclusion of the plaintiff's case, this court should direct a verdict on behalf of the defendants dismissing this action in its entirety." R & B Construction filed its trial brief the same day and also proposed no jury instructions as to damages. At trial, Lawrence Construction and R & B Construction reiterated their arguments with respect to their directed verdict motions and objected that the trial court should give the jury no instructions as to damages, but neither defendant made a specific objection to the form of the instructions given or proposed an alternative instruction.[10]

9. CR 51.

10. When the trial court allowed counsel to make their objections as to the jury instruc-

tions, counsel for Lawrence Construction stated:

First of all, we would object to the instructions on the basis of our motion for DV and for the same reasons. Secondarily, we feel

We find this error as to the instructions unpreserved for our review. The procedure outlined in CR 51 gives the trial judge an opportunity to correct any errors before instructing the jury.[11] This Court has held time and time again that, in order to be considered on appeal, a specific objection must have been raised in the trial court,[12] and a party may not preserve an error relating to the instructions by postverdict motion.[13] We believe R & B Construction Company is precluded from contending on appeal that the wording of the instructions given by the trial court was erroneous when neither offered a written instruction of its own nor objected to the form of those prepared and given by the trial court. In order to preserve this error for our review, R & B Construction should have complied with the trial court's pretrial order and submitted proposed instructions.

Although the construction companies also failed to include a draft instruction as to their requested defense instruction as to estoppel, we believe that they preserved the question for our review because the specificity of their request gave the trial court notice of the nature of the instruction requested and of the testimony which R & B Construction believed justified such an instruction. Although we find this issue preserved, we disagree with R & B Construction's allegation of error. The trial court instructed the jury to find for the defendants if it believed that the Ellisons'/Sullivans' conduct represented implicit consent to the trespass:

*INSTRUCTION NO II*

You will find for the Plaintiffs if you are satisfied from the evidence that one or both Defendants, without the consent of Plaintiffs, deposited landfill material on Plaintiffs' land. Otherwise, you will find for Defendants.

*Consent may be express or implied from the circumstances or conduct of the party.*

*QUESTION NO. 1:*

Do you find from the evidence that Lawrence Construction and Leasing, Inc., without the express *or implied* consent of Plaintiffs, deposited landfill material on Plaintiffs' land?

Answer "Yes" or "No" _____.

*QUESTION NO. 2:*

Do you find from the evidence that R & B Contracting, Inc., without the express *or implied* consent of Plaintiffs, deposited landfill material on Plaintiffs' land?

Answer "Yes" or "No" _____.[14]

■ R & B Construction cites us to no authority suggesting that a trial court should instruct the jury regarding the estoppel defense by separate instruction in a case of this type. We believe that the instructions given by the trial court in this case properly addressed the factual dispute at trial regarding whether the Ellisons'/Sullivans' conduct induced the construction companies to believe that the

that there was no justification——the law was clear that there was no evidence to support any claim for damages, and those instructions should not be given. And the instructions regarding the question of whether or not there was any violation of law by either defendant has clearly been shown by the evidence and the law. And the plaintiffs have failed to meet their burden. For that reason we object to the instructions in their entirety.

Counsel for R & B Construction merely joined in these objections.

11. *Brumley v. Richardson*, Ky., 273 S.W.2d 54 (1954).

12. *See, e.g., Pipelines, Inc. v. Muhlenberg County Water Dist.*, Ky., 465 S.W.2d 927 (1971); *Tillman v. Heard*, Ky., 302 S.W.2d 835 (1957); *Young v. DeBord*, Ky., 351 S.W.2d 502 (1961), *Kentucky Border Coal Co. v. Mullins*, Ky., 504 S.W.2d 696 (1973).

13. *Scudamore v. Horton*, Ky., 426 S.W.2d 142 (1968); *Bingham v. Davis*, Ky., 444 S.W.2d 123 (1969).

14. Emphasis added.

Ellisons/Sullivans had given their consent for the storage of equipment and disposal of highway waste on their property. If the jury believed the construction companies' testimony that the Ellisons/Sullivans observed and assisted them in disposing highway waste upon the Ellisons/Sullivans' property in such a way that the construction companies reasonably believed that the Ellisons/Sullivans had consented to the disposal, the instructions required the jury to find for the defendants. R & B Construction and Lawrence Construction presented a host of evidence suggesting that the Ellisons/Sullivans had given them permission to dispose of the highway waste upon their property, but the jury found for the Ellisons/Sullivans. As we believe the trial court properly instructed the jury regarding the factual basis for the defense of estoppel by requiring a defense verdict in the event the Ellisons/Sullivans implicitly consented to the trespass by their conduct, we find no reversible error.

## DIRECTED VERDICT ON DAMAGES

The directed verdict issues presented in this appeal give us an opportunity to examine issues relating to the burden of proof as to damages in an injury-to-property case. The Ellisons'/Sullivans' appeal from the opinion of the Court of Appeals reversing the trial court's judgment on the grounds that a directed verdict should have been granted at the close of the plaintiffs' evidence because the Ellisons/Sullivans introduced no testimony concerning the fair market value of their property after the trespass. Lawrence Construction and R & B Construction argue that the Court of Appeals holding is correct, but submit that the trial court could also have been reversed because of a failure to grant a directed verdict in their favor either: (1) at the close of all evidence, because expert testimony submitted by the defense conclusively established that any trespass committed by the two construction companies resulted in no diminution in the fair market value of the property; or (2) at the close of the plaintiffs' case when the Ellison/Sullivans failed to prove their damages with the requisite specificity.

## THE ELLISONS'/SULLIVANS' FAILURE TO INTRODUCE APPRAISAL TESTIMONY

In *Newsome v. Billips*,[15] the Court of Appeals correctly recognized that a plaintiff seeking restoration cost damages in an injury-to-property case need not introduce evidence of a diminution in the fair market value of the property in order to state a prima facie case and overcome a motion for directed verdict because reasonable inferences may be drawn from evidence of restoration costs:

In order to sustain a motion for a directed verdict, the court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion. A verdict should not be directed unless the evidence is insufficient to sustain the verdict. The Newsomes' proof was based solely on the cost to cure by repair. They did not offer any direct proof of the difference in the fair market value of their property immediately before and immediately after the alleged damages . . . . [I]t may be presumed that the anticipated cost of repair would reduce the value by an equal amount. The directed verdict was properly denied.[16]

In *Newsome*, the Court of Appeals cited to *State Property and Buildings Commission v. H. W. Miller Construction Co.*, 385 S.W.2d 211 (Ky. 1964)[17] where our predecessor court reversed a directed verdict in favor of the defense at the close of the plaintiffs' evidence because the plaintiff failed to introduce any evidence of a diminution in fair market value in a breach of

15. *Supra* note 3 at 254–5.

16. *Id.* (citations deleted).

17. Ky., 385 S.W.2d 211, 214 (1964).

construction contract case. The old Court of Appeals held that a party seeking damages in a property case whose evidence relating to damages only addresses the cost to repair has produced a prima facie case, but the Court's dicta suggests that direct evidence regarding fair market value may require contrary direct evidence:

> [W]hen the owner has proved what it reasonably cost him to make the building conform to the contract it should not be necessary for him to go into the question of market value unless that question is raised by the defense. In the absence of evidence to the contrary it would ordinarily be presumed (and our decisions have tacitly recognized this) that as between a willing seller and a willing buyer of a new building known to be in need of certain repair work the anticipated cost of the remedial work would reduce the price by an equivalent amount. So, unless there is evidence to inject it, the question of market value need not be considered, and the commission's evidence in this case was not deficient in that respect.[18]

Therefore, in the case now before us, the Court of Appeals incorrectly concluded that the construction companies should have been granted a directed verdict because of the Ellisons'/Sullivans' failure to introduce evidence of a diminution in the fair market value of their property during the plaintiffs' case-in-chief. The Ellisons/Sullivans introduced evidence showing that the construction companies dumped a quantity of highway waste material upon their property and they proved the cost to remove that waste and return the property to its original state. Such evidence created a reasonable inference as to the diminution in fair market value of the subject property, and the trial court correctly denied the defendant construction companies' motions for directed verdict at the close of the Ellisons'/Sullivans' evidence.

The question of whether the trial court should have granted a directed verdict to the construction companies at the close of all evidence is a question of first impression for this Court, although appellate courts in this state have discussed the issue before in dicta. Where the trial court overrules a motion for directed verdict, we must examine the evidence presented in the light most favorable to the party opposing the motion:

> In considering the sole question before us, i.e., whether the defendant was entitled to a directed verdict, the court must draw all fair and rational inferences from the evidence in favor of the plaintiff, and the evidence of such party's witnesses must be accepted as true, for the purposes of such a motion.[19]

This Court has conceptualized its review of whether a defendant was entitled to a directed verdict as determining whether a jury could reasonably have reached its verdict on the basis of the evidence before it:

> A motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made. Upon such motion, the court may not consider the credibility of evidence or the weight it should be given, this being a function reserved to the trier of fact. Moreover, the trial court should favor the party against whom the motion is made with all inferences which may reasonably be drawn from the evidence. Upon completion of the foregoing evidentiary review, the trial court must determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be "palpably or flagrantly" against the evidence so as "to indicate that it was reached as a result of passion or prejudice." If the trial court concludes that such would be the case, a directed ver-

---

18. *Id.* at 214.

19. *Cassinelli v. Begley,* Ky., 433 S.W.2d 651, 655 (1968).

dict should be given. Otherwise, the motion should be denied.[20]

If we apply this standard of review to the case before us, we must assume as true the following: (1) the construction companies deposited approximately 14,500 cubic yards of highway waste on the Ellisons'/Sullivans' property without permission; and (2) it would cost the Ellisons/Sullivans ten cents (10¢) per cubic yard to remove the waste. As we must also draw all reasonable inferences in favor of the Ellisons/Sullivans, we must accept the reasonable inference that the value of a piece of property has decreased by the amount necessary to restore it to its original condition.

■ The construction companies contend that the trial court should have entered a directed verdict in their favor at the close of all evidence because the Ellisons/Sullivans introduced no evidence to contradict the opinion of real estate appraiser Robert Daniels that the fair market value of this parcel remained constant at $325,000 between May and November of 1992. In other words, they argue that the direct evidence of the fair market value of the piece of property which they introduced by way of expert testimony from a real estate appraiser acted as a trump card which entitled them to a directed verdict. Unquestionably, the Ellisons/Sullivans elected not to engage in a so-called "battle of the experts" by introducing testimony

from a different real estate appraiser to rebut the testimony of Mr. Daniels, and they certainly took a risk that a properly instructed jury would find the expert testimony credible and return a defense verdict. We feel, however, that the totality of the evidence before the jury at the close of all evidence justified a damage award for the Ellisons/Sullivans. Parties can contradict expert testimony in more than one way. We believe the Ellisons'/Sullivans' inferential evidence regarding a diminution in the fair market value of their property as a result of the "clean up costs" associated with restoring the property to its original position was a sufficient basis for the trial court's submission of the damages issue to the jury. Evaluation of the weight which should be given to expert testimony is the exclusive province of the jury,[21] and a jury may properly conclude that indirect evidence gives it a better sense of the fair market value of a piece of property than does an "expert's" opinion.

■ When we view the evidence as to damages through the directed verdict "lens," we believe a reasonable jury could have disregarded the testimony of Mr. Daniels and believed that the fair market value of the Ellisons'/Sullivans' property did decline after the highway waste was deposited on it. Despite dicta to the contrary in *Newsome v. Billips*[22] and *State Property & Buildings Commission v. H.*

20. *National Collegiate Athletic Association v. Hornung*, Ky., 754 S.W.2d 855 (1988) (citations omitted).

21. *See, e.g., Commonwealth, Dept. of Highways v. Tackett*, Ky., 498 S.W.2d 630 (1973) ("We have said many times … it is for the valuation expert to determine what he considers the factors which determine market price, and it is for the jury to evaluate that testimony." *Id.* at 632–33.); *Commonwealth, Dept. Of Highways v. Spillman*, Ky., 489 S.W.2d 811 (1973) ("It was for the witness to decide what property he considered as comparable and after the information was furnished to the jury for it to determine what weight should be given to the testimony." *Id.* at 814.); *Commonwealth, Dept. of Highways v. Dehart*, Ky.,

465 S.W.2d 720 (1971) ("The fact that [the jury] awarded a sum [which was in between the two figures suggested by the opposing experts] does not render the verdict excessive or make it unsupported by sufficient probative evidence. In fact, it shows that the jury was dutifully performing one of the ancient functions assigned to it——weighing the probative value of evidence and choosing that particular testimony most convincing to it. When a verdict is based on substantial evidence of probative value it will be upheld even though the court might prefer the opposite line of evidence or something in between." *Id.* at 722 (citations omitted).).

22. *Supra* note 3.

*W. Miller Construction Co.,*[23] reasonable inferences regarding diminution in fair market value drawn from evidence of restoration costs do not evaporate when an "expert" expresses an opinion contrary to the reasonable inference. The expert's opinion is additional evidence for the jury to consider in deciding the issue, but no more and no less. Therefore, at the close of all of the evidence, although the Ellisons/Sullivans had introduced no "direct" evidence of a decline in the fair market value of the land through the testimony of a real estate appraiser, we believe that the trial court correctly considered the evidence presented concerning the cost to remove the highway fill material as inferential evidence of diminution in value.

The trial court implicitly determined by overruling the motion for directed verdict that it would not be unreasonable for a jury to find that the property in question had diminished in value as a result of the depositing of the debris upon it. We do not find such ruling clearly erroneous.

Counsel for the Ellisons/Sullivans cross-examined Mr. Daniels regarding his opinions regarding the fair market value of the property on the relevant dates and was able to demonstrate that the appraiser's opinion was based, at least in part, on his belief that an insignificant amount of fill had been added to the property during that time span. At trial, the parties had contested the extent of the dumping on the Ellisons'/Sullivans' property, and evidence in the record would support a jury's disregard of the appraiser's conclusions. We note that neither party examined Mr. Daniels regarding how he reached his opinion regarding the fair market value of the property, and the jury was given no basis for Daniels's opinion other than his qualifications and appraisal experience. This Court is not prepared to label as "palpably or flagrantly against the evidence" the trial court's conclusion that a jury could find that the value of the property had declined in the face of the appraiser's testimony.

23. *Supra* note 17.

We also must note that the jury visited the property and had an opportunity to personally view and assess its condition for the purposes of evaluating the in-court testimony.

## INSUFFICIENT SPECIFICITY OF DAMAGES

R & B Construction argues that it was entitled to a directed verdict at the close of the Ellisons'/Sullivans' evidence because the Ellisons/Sullivans failed to prove their damages within a reasonable degree of specificity as required by law. R & B Construction alleges that the evidence introduced by the Ellisons/Sullivans merely demonstrated that the contours of the property had changed since 1985, but was silent as to important questions relating to the source of the fill material. The subcontractor emphasizes that the evidence at trial showed that fill material had been placed on the property at other times (both before and after the highway project) by persons unconnected with the highway project, and the Ellisons/Sullivans introduced no evidence which would enable a jury to determine what portion of the contour-analysis-produced figure of 14,500 cubic yards of material came from the highway project. In other words, it is alleged that the extent of the Ellison/Sullivans' evidence at trial was: (1) Between 1985 and 1995, 14,500 cubic yards of material were added to the Ellison/Sullivan property; (2) Some of this material came from the highway construction project; and (3) Some of the highway waste material was deposited on the property by R & B Construction.

We disagree with this characterization of the Ellisons'/Sullivans' evidence, and believe the damages were proven with sufficient specificity. While R & B Construction correctly identifies that the testimony at issue merely deduced from changes in the contour of the property that the elevation of the property had changed by 14,500

cubic yards, other evidence demonstrated that R & B construction contributed substantially to this total. Perhaps the most telling evidence that this material came from R & B Construction's highway excavation project can be found in the physical description of the material itself, which Bud Ellison described at trial as huge chunks of concrete and blacktop, culvert pipe, dirt and gravel. At trial and now before this Court, R & B Construction maintains that the Ellisons'/Sullivans' failure to prove the exact proportion of the fill material traceable to the highway construction companies mandated a directed verdict because without such data, a reliable damage calculation would be impossible. Our review of the record leads us to believe the evidence presented by both sides created a factual issue appropriate for jury resolution with regard to the amount of highway waste material dumped on the Ellisons'/Sullivans' property by the construction companies. Accordingly, the trial court correctly denied R & B Construction's motion for directed verdict.

The subcontractor cites *Howard v. Carmichael,* 237 Ky. 462, 35 S.W.2d 852 (1931)[24] a factually unique trespass case concerning a trespass suit complicated by a litany of land ownership questions, in support of its claim that the plaintiffs failed to prove their damages with requisite specificity. Our predecessor court held that the commissioner below acted within his discretion in denying damages for timber removal because of two factually unique aspects of that case: (1) the Commissioner could not determine what proportion of the timber removed in connection with the coal mining operations came from the disputed property as opposed to property owned by the coal mining company, and (2) the Commissioner could not determine from which of the claimants' property timber was removed:

Evidence was submitted as to the various items of damage, and it was shown that the taking of timber was a major item. But it was very vague and indefinite. Representatives of the coal companies testified that in taking the timber no consideration was given to any particular portion of the boundary, and it was cut indiscriminately .... It was shown that these particular seams of coal yielded about 4,000 tons to the acre, and it required 20,-000 feet to timber an acre. The quantity of coal removed from the Gibson property was definitely ascertained to be 462,265 tons. On this basis about 2,310,000 feet were required, which, at the lowest price of $6 per thousand feet on the stump, made the value of the timber used in the Gibson mine $13,260. But it cannot be ascertained how much of the timber came from the Howard and how much from the Gibson land. Perhaps it might be reasonably concluded that one-half of the timber used in the entire mining operations on both the Howard and Gibson properties was taken from the Howard lands. But when it comes to allocating the value of that timber among the different Howard parcels, we quite agree with the chancellor that the evidence was too vague and uncertain to justify any decree respecting the item. It consisted only of estimates of some of the parties, and those estimates were as far apart as the poles. A court is not expected to guess the correct solution, and litigants ought not to complain when the court refuses to do so because of their failure to produce the proof.[25]

The case before us contains none of the land ownership issues which prevented apportionment in the authority cited by the subcontractor, and here all of the evidence demonstrates that R & B Construction

24. 237 Ky. 462, 35 S.W.2d 852 (1931). *See also Carmichael v. Old Straight Creek Coal Corporation,* 232 Ky. 133, 22 S.W.2d 572 (1930).

25. *Howard v. Carmichael, supra* note 24 at 856.

deposited highway waste material upon property owned by the Ellisons/Sullivans. We find that the Ellisons/Sullivans proved their damages through just and reasonable inference as far as was reasonably possible, and "with as much certainty as the nature of the tort and the circumstances permitted." [26] We decline R & B Construction's invitation to hold plaintiffs to a standard of mathematical precision. R & B Construction's dispute is, at its essence, a factual one: it maintains that it deposited no more than 4,000 cubic yards of material on the property, while the Ellisons/Sullivans argue for a larger volume. Under any interpretation, the Ellisons'/Sullivans' evidence warranted submission of the case to the jury for it to determine the extent of the construction companies' liability and the trial court correctly denied this motion for directed verdict.

## EVIDENTIARY ISSUES

R & B Construction argues that it was prejudiced by erroneous trial court rulings as to the admission and presentation of evidence. Specifically, R & B argues: (1) Plaintiffs' Exhibit 21, which consisted of pages of a highway construction manual requiring a contractor to obtain written permission prior to dumping, was not properly authenticated and the trial court should not have allowed its admission into evidence; (2) the trial court improperly allowed Randy Ellison to testify in rebuttal although he was present in the courtroom in violation of the trial court's order requiring separation of witnesses during defense testimony; and (3) that it was prejudiced by having to begin presenting its evidence prior to the time when the trial court had arranged for the jury members to visit and view the site in question.

After a review of the record, we believe that the trial court acted well within its discretion in ruling upon the presentation of evidence, and we find no error in the

trial court's handling of these issues raised by R & B Construction.

For the reasons outlined above, we reverse the decision of the Court of Appeals and reinstate the judgment of the Kenton Circuit Court.

LAMBERT, C.J.; COOPER, GRAVES, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs by separate opinion with LAMBERT, C.J., and STUMBO, J., joining that concurring opinion.

JOHNSTONE, J., dissents by separate opinion.

COOPER, Justice, concurring.

In this case, the defendants dumped 14,500 cubic yards of waste material on the plaintiffs' properties. The jury found that the cost to remove the waste material and thus restore the properties to their original condition was $72,500. The defendants produced an "expert" who testified that the presence of the waste material did not affect the fair market value of the plaintiffs' properties. Justice Johnstone's dissent posits that a literal interpretation of *State Property & Buildings Commission v. H.W. Miller Construction Co.*, Ky., 385 S.W.2d 211 (1964) and *Newsome v. Billips*, Ky.App., 671 S.W.2d 252 (1984) mandates a directed verdict for the defendants in accordance with the opinion of their expert—and he may be right, though a directed verdict was held improper in both cases. But if that is the law of this Commonwealth, it ought to be changed. Since those cases are products of the judicial branch, this is the proper forum in which to effect that change. I would limit the holdings in those cases to their facts, *i.e.*, damage to *structures* caused by faulty construction, blasting or the like, not damage to unimproved real estate caused by dumping. If the majority opinion is a departure from a common law rule that a property

**26.** Restatement (Second) of Torts, § 912 (American Law Institute 1978).

owner cannot recover the cost of removing waste material illegally dumped on his property absent proof that the presence of the waste material has diminished the fair market value of the property, then I am proud to be riding on that train.

LAMBERT, C.J., and STUMBO, J., join this concurring opinion.

JOHNSTONE, Justice, dissenting.

I must respectfully dissent from the majority opinion holding that the trial court properly submitted the issue of damages to the jury. In so holding, this Court has misconstrued the rules governing the operation of presumptions, and thus used the incorrect standard of measurement in determining the sufficiency of the evidence. Rule 301 of the Kentucky Rules of Evidence governs the use of presumptions in civil actions.[1] The drafters of this Rule explained its intended operation thusly:

> This provision adopts what is commonly known as the "bursting bubble" approach to presumptions. Proof of the basic facts of the presumption will shift the burden of going forward with evidence to the opponent of the presumption. If the opponent fails to satisfy this burden the party in whose favor the presumption operates is entitled to a directed verdict on the presumed fact. If the burden is satisfied the presumption disappears from the case and has no additional impact on the burden of proof. Specifically, it does not have an impact on the placement of the burden of persuasion as to the presumed fact; this burden remains on the party to whom it would be allocated if no presumption existed.

Study Committee, *Kentucky Rules of Evidence—Final Draft*, p. 18 (Nov.1989).

1. The rule reads as follows:
   In all civil actions and proceedings when not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut

In the case at bar, when the Ellisons/Sullivans introduced evidence as to the dumping of waste on their land and the subsequent cost of removal, a presumption was created that the diminution in fair market value of the land equaled the cost to return the land to its original state. We stated a similar principle in *State Property and Buildings Commission of Department of Finance v. H.W. Miller Construction Co.*, Ky., 385 S.W.2d 211 (1964):

> *In the absence of evidence to the contrary it would ordinarily be presumed ... that as between a willing seller and a willing buyer of a new building known to be in need of certain repair work the anticipated cost of the remedial work would reduce the price by an equivalent amount. So, unless there is evidence to inject it, the question of market value need not be considered ....*

*Id.* at 214 (emphasis added). In this case, however, the construction companies rebutted that presumption by introducing expert testimony that the value of the land before and after the trespass was the same. At this point, the presumption "burst," and the burden of going forward with the evidence shifted back to the Ellisons/Sullivans.

Professor Lawson explains the task faced by a trial judge when a party has presented evidence in rebuttal to a presumption as follows:

> Under this standard a trial judge is obligated to make one of the following findings in evaluating evidence presented in contradiction of a presumption: (i) that no reasonable juror could find the nonexistence of the presumed fact; (ii) that reasonable jurors could differ as to the existence or nonexistence of that fact; or (iii) that no reasonable juror could find the existence of the presumed fact. A finding of the first type would

or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial on the party on whom it was originally cast.

call for a directed verdict in favor of the proponent of the presumption. A finding of the second type would result in a jury submission on the issue of the presumed fact. *A finding of the third type would revive the burden of going forward with evidence as to the presumed fact and shift it back to the proponent of the presumption; a directed verdict in favor of the opponent of the presumption would be required if additional evidence of the presumed fact is not produced.*

Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 10.05 at 552 (3d ed.1993) (emphasis added).

The above analysis is to be done in light of the weight and sufficiency of the rebuttal evidence. If this evidence simply casts doubt upon the presumed fact, then the presumption is reduced to a permissible inference. *See Workman v. Wesley Manor Methodist Home,* Ky., 462 S.W.2d 898, 900 (1971). However, if the rebuttal evidence is strong enough to "burst" the presumption rather than simply cast doubt upon it, then the proponent of the presumption must come forward with evidence in support of the presumed fact in order to survive a motion for directed verdict.

In the case at bar, the construction companies' direct evidence as to the before and after value of the land completely rebutted the presumption of diminution of value created by the Ellisons'/Sullivans' introduction of evidence of clean-up costs. This renewed the Ellisons'/Sullivans' burden of going forward with the evidence, which they failed to do. Thus, the construction companies were entitled to a directed verdict.

The operation of the above principles is demonstrated in the case of *Newsome v. Billips,* Ky.App., 671 S.W.2d 252 (1984), which is factually indistinguishable from the case at bar. Defendant Billips damaged rental property owned by Plaintiffs, the Newsomes, while the former's mining company was conducting blasting opera-

tions. The Newsomes sued for damages and proved the cost of repair at somewhere between $9,500 and $12,500. Billips put on evidence through an expert appraiser that the value of the house before the damage was $25,000 and was valued at $24,200 immediately thereafter and also put on evidence that the cost of repair was $600. After the close of evidence, Billips moved for a directed verdict on the grounds that the Newsomes failed to show the fair market value of the house immediately before and after the alleged damages. The trial court denied the motion, and in affirming the trial court, the Court of Appeals correctly stated:

In order to sustain a motion for a directed verdict, the court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion. A verdict should not be directed unless the evidence is insufficient to sustain the verdict. The Newsomes' proof was based solely on the cost to cure by repair. They did not offer any direct proof of the difference in the fair market value of their property. immediately before and immediately after the alleged damages, but the fact that the only proof of the difference in the before and after values was to be less than their estimated cost of repair was not in issue. *In the absence of evidence to the contrary, it may be presumed that the anticipated cost of repair would reduce the value by an equal amount.* The directed verdict was properly denied.

*Id.* at 254–55 (emphasis added and internal citations omitted).

In discussing the effect of Billips' direct evidence as to the before and after values of the property on the presumption created by the Newsomes' evidence of cost repair, the Court of Appeals again correctly stated:

In Kentucky, the real measure of damages in a blasting case where the injury is partial or "temporary" is the reasonable cost of repair. However, re-

pair is unreasonable when its cost exceeds the difference in the before and after values. *The unreasonableness of the Newsomes' cost figures was brought into issue by Billips' proof of the diminished value. Any presumption the Newsomes might have enjoyed was eliminated by Billips' proof.* The Newsomes offered nothing to counter it.

. . . .

The law is clear enough. The problem in this case is with the proof and the development of the facts. The estimated cost to repair ranged from $600.00 to $12,500.00. The loss in value was essentially fixed at $800.00. The jury could have awarded damages between $600.00 and $800.00. The verdict of $800.00 was proper whether it was based on the jury's determination of a cost to repair or the actual loss in value as was proven.

*Id.* at 255 (emphasis added and internal citations omitted).

As in *Newsome v. Billips*, the Ellisons/Sullivans in the case at bar were entitled to the presumption that their proof of cost to restore the land to its original condition equaled the diminution in value of the land. However, the construction companies' proof of the before and after value of the land eliminated that presumption. Consequently, this limited the amount of the Ellisons'/Sullivans' damages to the construction companies' proof of diminution of the fair market value of the property. Unfortunately for the Ellisons/Sullivans, they failed to present any competent countervailing evidence as to the diminution in value. As a result, the Ellisons'/Sullivans' unrebutted proof of no diminution in value entitled the construction companies to a directed verdict, since the Ellisons/Sullivans failed to prove damages.

I believe the majority opinion loses sight of that which *Newsome v. Billips* makes obvious by misconstruing the issue, which it frames thusly:

Despite dicta to the contrary in *Newsome v. Billips* and *State Property and Buildings Commission of Department of Finance v. H. W. Miller Construction Co.*, reasonable inferences regarding diminution in fair market value drawn from evidence of restoration costs do not evaporate when an "expert" expresses an opinion contrary to the reasonable inference. The expert's opinion is additional evidence for the jury to consider in deciding the issue, but no more and no less.

*Majority Opinion* at 77.

However, the issue in this case is not whether expert testimony concerning fair market value of property trumps lay testimony on the same question. Indeed, our case law clearly holds that an owner of land or other lay witness is not excluded from testifying as to the value of property on grounds that he or she is not an expert. *See, e.g., Commonwealth, Department of Highways v. Fister*, Ky., 373 S.W.2d 720, 722–23 (1963). Rather, the issue is whether evidence of the cost to restore the land to its pre-trespass conditions is competent evidence to prove the fair market value of the land post-trespass.

While conceding that the Ellisons/Sullivans introduced "no 'direct' evidence of a decline in the fair market value of the land . . . ,"[2] the majority nonetheless holds that the Ellisons/Sullivans introduced sufficient "inferential evidence" of diminution of the fair market value of the property in the form of " 'clean up costs' associated with restoring the property to its original position . . . ."[3] It is axiomatic that diminution of the fair market value of the property in this case equals the fair market value of the property pre-trespass minus the fair market of the property post-trespass. Thus, the majority holds that evidence to restore the property to its original state is competent evidence of the property's fair

2. *Majority Opinion* at 77.

3. *Majority Opinion* at 76.

market value post-trespass, which is simply incorrect.

The number of cases dealing with the competency of evidence in demonstrating fair market value are legion within the Commonwealth. Like the majority, I can find not one of them that holds that cost of repair or restoration is competent evidence of fair market value. Unlike the majority, I am willing to admit my failure rather than trying to reach a desired result via misdirection with the pertinent issues.

Determining fair market value is essential in assessing damages to real estate. Where such damage is permanent, it acts as a benchmark, with the difference between the property's fair market value immediately prior to and subsequent to the injury determining damages. *River Queen Coal Co., Inc. v. Mencer*, Ky., 379 S.W.2d 461, 464 (1964). Where such damage is temporary, it serves to determine the reasonableness of the cost of repairs, a prerequisite being that such cost not exceed the property's pre-existing fair market value. *Kentucky Stone Co. v. Gaddie*, Ky., 396 S.W.2d 337, 340 (1965). In either event, without such a determination of fair market value, no proper assessment of damages is possible. To allow evidence of the cost of repair or restoration to serve as competent evidence of diminution in value is to do away with the requirement under our law that the cost of repairs or restoration in a temporary trespass case be reasonable. Such a change in this area of the law is significant, and in my view, unwarranted.

The property owners, in failing to go forward with competent evidence demonstrating a diminution of fair market value, failed to prove damages. Under a permanent damage analysis, the diminution of the property's fair market value was $0, while a temporary damage analysis yields that any repair costs was *prima facie* unreasonable. As a result, the trial court had an insufficient basis as a matter of law for submitting that issue to the jury. I would therefore affirm the holding of the Court of Appeals that the trial court erred in failing to grant a directed verdict to the construction companies at the close of evidence.