Kathey CARTER and Ray Carter, Randal and Carolyn Sweeney, Appellants,

v.

COALFIELD LUMBER COMPANY, INC., Appellee.

No. 2009–CA–000519–MR.

Court of Appeals of Kentucky.

Dec. 3, 2010.

---

**3.** See *Chappell v. Kuhlman Electric Corp.,* 304 S.W.3d 8 (Ky.2009).

**4.** *Newberg v. Weaver,* 866 S.W.2d 435 (Ky. 1993).

Ned Pillersdorf, Prestonsburg, KY, for appellant.

Elbert Alvin Fletcher, Lowmansville, KY, for appellee.

Before CAPERTON, THOMPSON, and VANMETER, Judges.

## OPINION

CAPERTON, Judge:

Kathey and Ray Carter and Randal and Carolyn Sweeney appeal from the Martin Circuit Court's grant of Coalfield Lumber Company, Inc.'s motion for judgment notwithstanding the verdict ("JNOV") for failure to properly prove damages to their real estate. In granting the motion, the trial court determined that the Appellants should have offered evidence of the repair costs in addition to the proffered diminution in fair market value evidence. Carter and Sweeney contend that they sustained their burden of proof and that the trial court erred in granting Coalfield's JNOV motion.

After a review of the parties' arguments, the record, and the applicable law, we find no error in the trial court's grant of Coalfield's motion for JNOV on the Sweeneys' claims. However, we agree with the Carters that the court erred in granting Coalfield's motion for JNOV on their claims, and accordingly reverse and remand this matter to the trial court for further proceedings not inconsistent with this opinion.

The facts in the matter *sub judice* were presented to a jury on February 10, 2009.[1] The Sweeneys are husband and wife who reside in the Beauty area of Martin County. The Carters are father and daughter whose property is adjacent to the Sweeneys. Carter and Sweeney each assert that their properties were damaged as a result of Coalfield's construction activities on the hillside behind their properties.

As to the Sweeney's claims, Carolyn Sweeney testified that Coalfield had been engaged in excavation activities directly behind the properties for approximately three to four months.[2] Carolyn testified that as a result of this activity, rocks fell onto their property, their pool was ruined as water went under her liner and "bowed

---

1. The Appellants made claims for nuisance, damage to real property, lost rental value, and loss of personal items.

2. Carolyn further testified that the bulldozers were approximately 100 feet from her house and Coalfield's name was emblazoned on the bulldozers.

up" the lining in the pool,[3] and that resultant drainage problems caused damage to their out-building. Carolyn further testified as to her conversation with Robert Maynard, an employee of Coalfield, who took pictures of the damage and said he would get back to them. Randal Sweeney testified about his conversations with another employee of Coalfield, a Mr. Jude, who also promised to get back in touch with the Sweeneys.

As to the Carters' claims, Ray Carter testified that he owned the property on which Kathy Carter's mobile home was located.[4] Prior to the excavation, Kathy had made extensive repairs to the residence, costing somewhere between $15,000 and $20,000. Kathy Carter testified that during the last night she lived in her home she was awakened by a landslide that pushed her home off its foundation and ten feet toward the road. She testified to the loss of her personal belongings, including furniture and electronics.

The Carters and the Sweeneys presented an appraiser, Gary Endicott. Endicott testified that the value of the Sweeney home had diminished in value by $25,000 from the damage to the property. Endicott testified that the Carter house was a complete loss of $10,000, the value of the house prior to the damage, as it was completely destroyed and that no new house could be placed there without fixing the slip activity.

At the close of the Coalfield's case-in-chief, Coalfield moved for a directed verdict. During the bench conference the trial court opined that in terms of damages to real property the Plaintiffs had to prove both the cost of repair and the difference in market value. In response, counsel directed the court to the testimony proved

by Endicott. The court denied Coalfield's motion. Thereafter, Coalfield presented a representative of the company who testified that he did not believe that they had caused the damage but did acknowledge talking to Randal Sweeney about a rock hitting their pool. Thereafter, Coalfield again moved for a directed verdict which the court denied.

The court submitted the case to the jury and the jury returned a verdict against Coalfield, awarding the Carters $10,000 and the Sweeneys $15,000. Coalfield then moved the court for a JNOV, arguing that the Carters and the Sweeneys had failed to prove their damages by competent evidence.

In granting Coalfield's motion for JNOV, the court noted the long-standing rule that damages for injury to real estate is the lesser of cost of repair or difference in fair market value. If the injury to property is permanent, the difference in fair market value is the measure of damages. If the injury to property is temporary, the measure of damages is the cost of repair. The determination of whether the injury to the property is permanent or temporary depends on comparing the cost of repair to the decline in fair market value. The court then noted that both the Plaintiffs and the Defendant tendered jury instructions which were substantially in accordance with the long-standing rule, which the court gave to the jury, even though the Plaintiffs did not produce evidence of repair costs.

The court then determined that it was certainly possible that the repair costs, especially in the case of the Sweeneys, would have been substantially less than the diminution in fair market value that the appraiser testified to. The court also

---

3. Carolyn testified that the Sweeneys have still not used the ruined pool.

4. Ray testified that he had made a deed to his daughter.

noted that the Plaintiffs had originally listed Eddie Hatfield of Hatfield Construction as a witness, who presumably would have offered testimony as to the costs of repair, but then failed to call him. The court concluded that the Plaintiffs failed in their burden of proof in proving their damages by competent evidence and granted the motion for JNOV.[5] It is from this that the Carters and Sweeneys now appeal.

On appeal, the Carters and Sweeneys present two arguments. First they argue that the trial court erred in granting Coalfield's motion for JNOV. In support of this argument, the Carters and Sweeneys assert that the law does not require that plaintiffs prove both costs of repair and diminution in value and that because Coalfield did not produce any evidence in rebuttal of the testimony of the appraiser, then the Carters and Sweeneys were not bound by the lesser of the two figures concerning cost of repair versus diminution in value. Moreover, they argue that under *Ellison v. R & B Contracting, Inc.,* 32 S.W.3d 66 (Ky.2000), the fact-finder is free to infer the costs of repair from the diminution in value. Secondly, the Carters and Sweeneys argue that the trial court erred in restricting their claim for damages; namely, the restriction on compensation for reasonable rental value of the property and punitive damages. Coalfield counterargues that the trial court did not err in granting its JNOV motion nor in restricting the Carters' and Sweeneys' claims for damages. After our review of the arguments, we find dispositive the issue concerning the grant of JNOV.

▮ At the outset, we note that a motion for JNOV shall not be granted unless "there is a complete absence of proof on a material issue or if no disputed

issues of fact exist upon which reasonable minds could differ." *Bierman v. Klapheke,* 967 S.W.2d 16, 18–19 (Ky.1998). We review a decision granting JNOV for clear error. *Moore v. Environmental Const. Corp.,* 147 S.W.3d 13, 16 (Ky.2004). We must review the evidence presented to the jury, drawing all reasonable inferences most favorable to the verdict returned by the jury and that we must uphold the trial court's decision if a reasonable person could not have found as the jury did. *Id.* Moreover, in our determination we must bear in mind that,

> In ruling on either a motion for a directed verdict or a motion for judgment notwithstanding the verdict, a trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence. And, it is precluded from entering either a directed verdict or judgment n.o.v. unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.

*Taylor v. Kennedy,* 700 S.W.2d 415, 416 (Ky.App.1985).

In *Ellison,* our Kentucky Supreme Court addressed the inverse situation presented by the case *sub judice.* In *Ellison,* the Plaintiffs submitted evidence on the cost to repair their property but no evidence on diminution of value. In holding that evidence of repair costs created a reasonable inference as to the diminution in fair market value of the subject property, the Court noted:

> This issue was not appealed by either party and thus shall not be addressed by this Court.

---

**5.** The court denied the secondary ground for JNOV, that the Plaintiffs failed to meet their burden of proof on the question of causation.

Before we address the specific legal issues before this Court in their current procedural posture, we feel it would be of benefit to the bench and bar to review the types of damages available to a claimant for injury to real estate. In cases such as the one before us, we have upheld two distinct types of damages: (1) if the injury to the property is permanent, the amount by which the fair market value of the property decreased immediately prior to and after the trespass; but (2) if the injury to the property is temporary, the cost to return it to its original state. We have distinguished between "permanent" and "temporary" injuries on the basis of the cost of restoration and have held that injuries to real estate are "permanent" where the cost to restore the property to substantially its original state exceeds the amount by which the injury decreased the property's value. Reasonable restoration costs are an available remedy only in "temporary" injury cases where the property may be restored to its original state at a cost less than the amount by which the market value of the property decreased as a result of the trespass.

As a practical matter, therefore, the amount by which the injury to the property diminishes its total value operates as an upper limit on any damage recovery. Claimants may receive restoration cost damages in injury-to-property cases only when compensation in the form of restoration costs is the least expensive way to make those claimants whole. This Court's most recent opinions addressing the issue of the damages available in injury-to-property cases have sidestepped the "permanent" versus "temporary" distinction and focused on the way in which the amount by which the decrease in property value operates as a practical limit on the amount of recovery. We reiterate today, however, that cost to repair damages are available only where the factfinder determines that the injury to the property may properly be characterized as "temporary" by finding that the property may be restored at an expense less than the total amount by which the injury decreased the property's value.

Questions regarding the cost of repairing a particular injury to real estate and the extent of any diminution in fair market value of the real estate as a result of an injury are questions of fact. Accordingly, we hold that in future cases where a claimant seeks compensation in the form of repair costs for an injury to land, trial courts shall require the jury to find whether the injury may be repaired at a cost less than the diminution in the value of the property, and, if the jury finds otherwise, limit the claimant's recovery to the diminution in the value of the property.

*Ellison* at 69–70 (internal citations omitted).

■ In the case *sub judice*, the Sweeneys offered evidence solely on diminution of value through the testimony of Endicott. Endicott testified that the value of the Sweeney home had diminished in value $25,000 as a result of the damage to the property. Under *Ellison*, the Sweeneys did not sustain their burden of proof concerning their claim for damages as they failed to provide evidence of the cost of repair to their property. *See Ellison* at 77. Thus, the trial court did not err in granting the motion for JNOV as to the Sweeneys' claim. However, a different factual situation was presented by the Carters.

■ Endicott testified that the Carter house was "completely destroyed" at a loss of $10,000, the value of the house prior to

the damage. Coalfield offered no evidence rebutting this testimony. It is properly inferable that the property is not repairable from Endicott's testimony that the house was completely destroyed and leaves no room for speculation on the reparability of the property absent rebuttal evidence. In light of Endicott's testimony, it would be disingenuous for the Carters to bring forth evidence of repair cost when their evidence was that the property had already been determined to be a complete loss by their expert.

Our Supreme Court in *Ellison* distinguished between permanent and temporary losses and found that damages for cost of repair were available only where the fact-finder determined that the injury to the property may properly be characterized as temporary. We find little similarity between the terms "temporary" and "completely destroyed" and, in light of no evidence that the property could be repaired, opine that the jury could not have found damages for repair.

■ Accordingly, we hold that in instances where property can only be determined to be a complete loss; i.e., where it cannot be repaired but instead must be replaced, that evidence of diminution in value alone is sufficient to overcome a motion for directed verdict as well as a motion for JNOV.

■ We now turn to the second argument presented by the Carters and Sweeneys; namely, that the trial court erred in restricting their claim for damages by restricting compensation for reasonable rental value of the property and for punitive damages. We agree with Coalfield that the trial court did not err in declining to issue jury instructions for the Carters' and Sweeneys' claims for damages for the reasonable rental value of the property. In *Brumley v. Mary Gail Coal Co.*, 246 S.W.2d 148, 151 (Ky.1952), the court held:

[Brumley] elected to treat the alleged nuisance as being one permanent in character and sought damages in the sum of $20,000 for diminution in the market value of his property. He testified that this loss of value was $25,000 and his reason for recovery is based upon this theory. He cannot recover for both diminution in market value and rental value and, therefore, the testimony concerning the loss of rental value was properly rejected.

*Id.*

Moreover, the Carters and Sweeneys failed to provide evidence of the rental value of the property; thus, the trial court properly rejected the jury instructions. *See also Adams Const. Co. v. Bentley*, 335 S.W.2d 912, 913–14 (Ky.1960).

■ We likewise agree with Coalfield that the trial court did not err in declining to issue jury instructions for the Carters' and Sweeneys' claim for punitive damages, as "punitive damages are not justified just because the injury was intentional.... Punitive damages may *be awarded for conduct that is outrageous*, because of the defendant's evil motive or his reckless indifference to the rights of others." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky.1985)(emphasis original). The Carters and Sweeneys failed to provide evidence of Coalfield's "evil motive." Thus, the trial court did not err in declining to issue jury instructions for the Carters' and Sweeneys' claims for punitive damages.

In light of the foregoing, we affirm the grant of JNOV on the Sweeneys' claims, and we reverse the trial court's grant of JNOV on the Carters' claims. Further, we affirm the denial of the trial court to include jury instructions for the Carters' and Sweeneys' claims of damages for the reasonable rental value of the property

and for punitive damages and remand to the trial court for further proceedings not inconsistent with this opinion.

ALL CONCUR.